J. C. FRENCH, ET UX v. KERMIT L. RICHARDSON, ET AL

5-4855            438 S.W. 2d 714

Opinion Delivered April 1, 1969

*Wright, Lindsey & Jennings* for appellants.

*Lawson E. Glover* for appellee.

LYLE BROWN, Justice.   This is an action in trespass instituted by J. C. French and wife, appellants here, against Kermit L. Richardson and Malvern Broadcasting Company.   Richardson and wife own the broadcasting Company.   The station is located on the Richardson lands, while the broadcasting tower is situated on adjacent lands belonging to appellants.   Plaintiffs below sought the removal of transmission wires running over their lands and connecting with the broadcasting station tower; they also sought damages allegedly caused by continuous trips across the French lands in servicing the lines and tower.   The chancellor held that the Frenches knew of the existence of the transmission wires and tower at the time they bought the lands and he declined to disturb the broadcasting company's use of that equipment and access thereto.   In so holding, the court rejected plaintiffs' theory that they were bona fide purchasers without notice of the broadcasting company's unrecorded easement lease covering the French lands.

In 1963 Mr. and Mrs. French acquired a twenty-five acre tract from Builders' Lumber & Supply Co., Inc. The deed contained the regular warranties, the only exception being this recitation: "Subject to any and all rights, easements and privileges now existing."   Five years previously, Builders executed a conveyance to Malvern Broadcasting, granting an easement lease over, across, and on the lands subsequently deeded to the Frenches.   The easement covered a transmission tower already located thereon.   It was for the stated purpose of "keeping, maintaining, and using its tower and transmission line."   Those facilities served the broadcasting station located a short distance away and on land not the subject of this litigation.   The easement lease was for a ten-year period with a ten-year option to renew. The recited consideration was one dollar.   The instrument was not recorded until after the Frenches purchased the lands on which the tower is located.

Here we have the Frenches purchasing a tract of land which at the time of their purchase was burdened with a servitude represented by an unrecorded easement lease. The law governing the respective rights of the parties in that situation is well settled. The prevailing rule is found in Am. Jur., Easements, § 156 (1957):

It has often been said that in order to affect the purchaser of a servient estate the easement if unrecorded, must be one that is apparent as well as necessary and continuous, or the marks of the servitude must be open and visible. Accordingly, it is held that if the servitude cannot be discovered by an inspection of the premises, the purchaser is not charged with notice of its existence, except in so far as he may be charged with constructive notice under the recording laws. On the other hand, the proposition that a purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises is sound beyond question.

A case in point is *Hannah* v. *Daniel,* 221 Ark. 105, 252 S.W. 2d 548 (1952). Hannah and Daniel purchased adjoining lots from J. C. King. Daniel's purchase was prior to that of Hannah. Shortly after Hannah moved upon his lot he observed his neighbor Daniel constructing a pond which overlapped on the Hannah property. Daniel was proceeding on the strength of an oral easement allegedly obtained from King before Hannah's purchase. In deciding for Hannah, this Court quoted the rule found in *Waller* v. *Dansby,* 145 Ark. 306, 224 S.W. 615 (1920):

The general rule is, that whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty as in the case of vendor and purchaser, and would lead to the knowledge of the requisite fact, by the exercise of

ordinary diligence and understanding. Or, as the rule has been expressed more briefly, where a man has sufficient information to lead him to a fact, he shall be deemed cognizant of it.

An examination of the evidence in *Hannah* v. *Daniel* convinced this Court that at the time Hannah purchased his property there was no physical improvement located on that property which would reasonably make it. apparent that a servitude existed. In the case at bar the evidence is clearly to the contrary, as will shortly be revealed.

The tower and transmission lines supported by poles were erected in 1958 on what was to become the French property. The tower is over 200 feet in height and the poles are similar to ordinary public utility poles. J. C. French, a Malvern business man, conceded that he was fully cognizant of the tower and poles being on the land which he proposed to and did purchase. He explained that he contemplated possibly moving his LP gas business from downtown and constructing a new building on the property purchased; that the new building would be located some distance south and east of the tower and on highway frontage; that the tower and lines would not interfere with his LP gas operation; and consequently he made no inquiry about an outstanding easement. He frankly stated his disappointment to be that he was not able, as he anticipated, to draw lease rent from appellees. Some sixty days after the purchase, Mr. French's son-in-law, who was pasturing cattle on the land, noticed an employee of the broadcasting company mowing a narrow strip to the tower and also mowing around it. It was at that point that French inquired and was advised of the easement lease.

Mr. French's purchase of the property with full knowledge of the existence of the tower and transmission lines was sufficient to put him on notice of the existence of a servitude. Had he exercised his duty to make

inquiry he would have easily discovered the existence and conditions of the lease easement. He is therefore charged, under our settled law, with notice of the easement.

Appellant argues that it would be inequitable to burden the French property with a "no-rent easement lease." Malvern Broadcasting actually paid a substantial consideration for the easement and improvements thereon. The tower was erected at a cost of some $5000. Appellee Richardson paid $42,500 to become the sole owner of the station and the evidence is convincing that the value of the easement, with the improvements thereon, figured substantially in the purchase price paid. Finally, Richardson might have been derelict in not recording the lease easement; and the real estate broker who handled the sale, and who had knowledge of the outstanding easement, might have avoided this litigation had he informed Mr. French of that instrument. Yet there was a combination of two factors which should have aroused inquiry on the part of French. First, his deed recited that it was subject to any easements and privileges then existing. Secondly, the improvements made under the easement were in notoriously open view and their existence was well known to French. He admittedly never discussed the transaction with his vendor, nor did he make any inquiry of the real estate broker about the significance of the quoted restriction in the deed.

Affirmed.