ROBERT J. GLADWIN, Judge
The Lafayette County Circuit Court granted the directed-verdict motion made by appellees Steve and Stacy Rowe, husband and wife, and found they had a prescriptive easement for sewer field lines located on land owned by appellant Peregrine Trading, LLC, which is solely owned by Eric Fletcher. Appellant argues on appeal that the circuit court erred by (1) considering the credibility of the evidence in ruling on the Rowes' directed-verdict motion related to appellant's claims for trespass, negligence, and private nuisance and (2) finding that the Rowes had a prescriptive easement. We affirm.
I. Standard of Review
In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. Schroeder v. Towmate, LLC , 2017 Ark. App. 516, at 3, 530 S.W.3d 380, 382. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. Id. Facts in dispute and determinations of credibility are solely within the province of the fact-finder. Id.
II. Facts
Appellant filed a complaint against the Rowes alleging that it owned approximately 100 acres of property adjacent to them on Lake Erling in Lewisville, Arkansas. While maintaining the property, Fletcher noticed an area that had become wet and had a foul smell. He dug a trench and exposed a sewage field line originating on the Rowes' property. Appellant claimed that the Rowes' sewage field line was wrongfully and intentionally placed on its property without authority, deed, easement, or permission. Appellant also alleged that the line was not compliant with state law and regulations and did not meet standards for approval by the state or county. Appellant sought damages caused by the Rowes' (1) intentional trespass; (2) negligent installation of a sewage field line on appellant's property; (3) sewage field line, which caused damage to the property by contamination, seepage, and noxious odors; and (4) creation of a private nuisance.
The Rowes responded with an answer, counterclaim, and third-party complaint against Fletcher. The Rowes alleged that *521 appellant filed its lawsuit after AGRED Foundation, which owned land around the lake and had two members, one of whom is Fletcher, began assessing annual fees for easement rights and docks on the lake, and the Rowes began questioning the validity of the foundation. The Rowes alleged that in retaliation for Stacy Rowe's questioning, appellant filed suit against them. The Rowes alleged that the septic field line was part of a system that had been in existence in that location since 1993. They argued that they had a prescriptive easement on appellant's property because (1) they bought their property in 2004; (2) the system, including field lines, had been there since before 1993; (3) they added a leg onto the field line in 2005; and (4) use of appellant's property had been under a claim of right for more than seven years. The Rowes also alleged that appellant had committed abuse of process against them by filing its complaint; had intentionally interfered with their lawful possession of their field line, committing trespass to chattel; and had committed conversion of their property by digging up the field line, damaging and destroying it. The third-party complaint against Fletcher was based on the facts as alleged in the Rowes' answer and counterclaim and sought damages for abuse of process, trespass to chattel, and conversion.
The Rowes filed a motion for summary judgment, and the circuit court denied it on August 15, 2016, finding that the motion sought the court's decision on the issue of prescriptive easement as uncontroverted and that the court was "unwilling at this stage to make that leap based on the pleadings[.]" The circuit court's order states:
Since the other parts of [appellant's] complaint for trespass, negligent installation, damages of such installation, and private nuisance are directly related to the claim of prescriptive easement, the Court must hear the facts of such easement to necessarily get to the other claims.
At trial, Fletcher testified that he is the sole member of appellant Peregrine Trading, LLC, and that the company owns the land at issue. Appellant bought the land from International Paper Company (IP) in 2012; the Rowes' property is on the eastern border of appellant's property; and Cook Road serves as the dividing line between the properties. He said that he had been walking the property in January 2015 when he discovered a smell and found a small puddle with grey water. He said that he had been on the property six months before to lay a water line, which was about twenty-five feet away from the puddle.
Fletcher said that after he discovered the puddle, he rented a backhoe and asked Billy Maus, an experienced heavy-equipment operator, to help him dig. Fletcher instructed Maus where to dig, and Maus found the sewer line with the backhoe. Fletcher denied moving, breaking, or damaging the line that was found. Fletcher concluded that the pipe was coming from the Rowes' house. Pictures of the uncovered pipe were admitted in evidence. Fletcher said that he had left the pipe uncovered.
Fletcher said that he had not known the sewer line was there before and that he had not seen anything to lead him to believe that there was a sewer pipe running from the Rowes' house onto appellant's property. He said that there were no visual indicators of septic lines running onto appellant's property when the property was purchased. He never gave the Rowes permission to put or maintain a sewer line on the property, and IP never put him on notice. Fletcher asked that the Rowes remove the lines and restore the surface of the property. He also asked that the Rowes remove the leg that was added on *522 the line, which he had learned about during Steve Rowe's deposition.
Fletcher said that the use of the land had not been affected, but the potential for development was affected by the sewer lines. He said that if they were not removed, the acre to half acre of land was "probably not developable and marketable." He said that the only inconvenience or disruption of use of the property would be in the future if the lines were not removed. He said that the land had a value of $35,000 per half acre up to $65,000 for an acre if there were no sewage lines and if it were developed. He said that with the lines remaining, the value would be affected.
On cross-examination, Fletcher said that his office manager put a trailer on the property and described it as a temporary camp. He said it was a trailer with a septic system and field lines, and he did not know where the field lines ran. He said that he had donated the land to her and that "we were in the process of subdividing it and that was a token of my appreciation for the work she had done for me. She has not purchased it yet. I have not donated it yet. I don't charge her anything at this point." He said that since 2012, he had never noticed anything except the wet spot the one time about which he had testified.
Billy Maus testified that he had done Fletcher a favor by digging up the field line with an excavator. He said that he had not damaged the line and that they had left the pipe exposed. He said that he had begun working for Fletcher three years ago and that he currently worked for one of Fletcher's companies. He said that he had been there at Fletcher's direction that day and that the wet spot had been about the size of a car hood.
Stacy Rowe testified that she and her husband own the property adjacent to appellant's property, and they had bought their land in 2004. She said that the previous owner had installed a septic tank between the house and Cook Road, and she had never asked where the field lines ran. She said that when they bought the property, they had kept the end of the septic line cleaned out; they had stayed off of it; and they had cut trees off of it. She said that it had slowly been covered with leaves and dirt because they had not been maintaining it. She said that she had been able to see the field line discharging at the surface at one time. She said this had happened while IP owned the land and continued until appellant bought it. She said that they had not maintained the end of the line after appellant bought the property. She said that she had testified in her deposition that there had never been a visual indicator that there was a septic line running across the road from her house onto appellant's property.
Stacy Rowe said that the original septic line had been there when they bought the property, that she understood the line to have been there since 1993, and that the 1993 line replaced the line originally built in the 1960s. In 2005, she and her husband added a leg to the existing field line to help with slow draining. Her husband had used a plumbing snake from the end of the original pipe back into the system. The end of the pipe is on appellant's land, and it was exposed when he used the plumbing snake. They did not get permission from IP when they added the leg to the field line. She said they were not hiding, they had no written easement, and it was her understanding that there was an agreement to put field lines on the property. She said that they did not talk to IP first because they thought they had permission, it was not hurting anything, and "everything is there as with all the neighbors." She said that the mounds where her neighbors' septic lines come out on the same property are visible and that the area is grassier where the line ends. She said *523 that there are visual indicators of her neighbors' septic lines going onto appellant's property. Since Fletcher dug up their sewer field line, the Rowes had not used their septic tank. She said that part of the pipe had been broken or cut and removed from the exposed field line, and they have not been able to use their house. She said that there had never been a problem with the field lines until she began asking questions about AGRED. She said that her husband had maintained the area around the field line from 2004 until 2012. She said that when they cleaned the field line, they could see the pipe coming out of the ground on appellant's property.
Steve Rowe said that the only way for IP to have known that their septic lines were on IP's property was that "anyone who had any common sense coming down the road knew it shouldn't be going into the lake. It had to cross the road if you were doing it legally." He said that green grass did indicate the location in the summertime. He did not know at what angle the septic line traveled from his house to the road and across. He said that the uncovered line depicted in the picture admitted in evidence was not the end of the original septic line. He knew this because he had put the plumbing snake in the end of the line. He said that he could locate the neighbors' septic lines that traveled onto appellant's property but admitted that he had stated in his deposition that he could not locate the neighbors' lines. He said that he had bush hogged the property to the lake to keep it clean before appellant bought the land. He also said that he had added a leg to the septic line in 2005 and had not sought a permit or permission from IP.
Steve Rowe said that he had assumed there had been an agreement regarding the septic lines when the house was built. He said that he could not use and enjoy the property because the septic system had been disconnected, and they could not sell it. He said that the field line had been cut and that he saw that the pipe had been cut with a hacksaw or handsaw. He said that the field line extended farther than depicted in the pictures, and he said there had always been a ditch at the end of the field line that he kept clean. The location where he cleaned out the field line with the plumbing snake is farther toward the lake than where the line had been dug up and cut. He had never received any notice from IP between 2004 and 2011, and he had maintained the property during that time. He said that the end of the field line had been visible for longer than seven years when he had maintained it. He said that it was impossible to use his property without the field line.
When appellant rested its case, the Rowes moved for a directed verdict on negligence, private nuisance, and trespass. The circuit court granted the motion for directed verdict and reasoned as follows:
All the issues really run together, because the, uh, issue really is going to be whether or not there is prescriptive easement or not. The other issues that would exist if there is a prescriptive easement will be taken care of once that's decided. That's by far the harder issue to decide.
Unfortunately for Mr. Fletcher and his company, um, when he bought the property, all this stuff really already existed, and I don't know what he could have done at that point in time until he saw what he saw to protect himself against that, because when you receive property from another, you're bound by what they should have known before they sold it to you. And, uh, in this particular case, um, your attorney probably had no choice, but anytime you have to call the other side as witnesses,
you're kind of stuck with some of the stuff they testified *524 about. And, uh, the Court, of course, has to decide all the credibility.
In this particular case ... these field lines have been there for many, many, years, and, uh, even under the test that the Court has, these particular owners, the Rowes had it the prescribed time that they would have been able to tack on who they bought it from and what they knew about the property. And clearly these field lines have been there for quite some time and certainly over the statutory period of time. Was that period of time open and notorious to the, uh, plaintiff in this particular case, or its predecessors in title. And Mr. Rowe testified and his wife, um, to some extent how they got the property and, uh, cleaned out where they said the terminus of the field line ended, and, of course, that's a different version than what the plaintiff's version is when they dug it up, because the pictures they've got, they say that's the end of it, but, of course, the testimony from the other side is it didn't, and he even testified that he used that end to clean it up, and that even made him decide to add on a leg, which he drew on the exhibit. And there really wasn't much contra-version about that he, when he drew on Plaintiff's Exhibit Number 2, that he extended that line much further on his drawing on the initial deposition than where the plaintiff says it ended. And the Court believes that the field line would have went further than ten or twenty feet from the road. It would have been constructed in a manner consistent with field lines, it's more reasonable for that. And even the drawing on the new leg shows it extends for a distance further than it would have been from the road, which gives further credence that at some point in time the field line was much longer than where the dig occurred after Mr. Fletcher owned the property, his company owned the property. And, uh, I think it's been established by the evidence that, uh, over that period of time that IP had it, that, uh, the Rowes owned the property, that not only did he store stuff on their property, he kept it mowed, bush hogged and he kept that field line where it was more clearly established. Now, what happened afterwards and he removed his stuff, I don't know how quickly it would have took leaves to cover it up, obviously it looks like it's a wooded area, but anyway, at that point in time he quit maintaining the full length of the field line into the permanence where he said it was ended.
Uh, why when it was dug up by the plaintiff at the point that nobody seems controvert right next to the road, of course, you can see the photograph aims, as everybody said, the angle you take photographs at can distort distance, but it's close to the road at any rate. That's where I have no doubt with the testimony there was some wet spot at that point-in-time for whatever reason. It was not really explained, but certainly it wasn't enough to constitute what would be considered a private nuisance, but that's when Mr. Fletcher discovered the sewer line, and that's what brought this lawsuit. And, of course, they had a proper right to bring this lawsuit
and make the other side prove their prescriptive easement, but the Court is convinced that there is a prescriptive easement for the field line[.] ... But that's the Court's ruling; that for seven years, over seven years, in fact, many more than seven years that has occurred that give rise to this prescriptive easement of the sewer line.
With the Court finding that there is a prescriptive easement, then obviously there is no negligent installation. I know you said they violated statute when they added the leg, but that was already *525 done, and long since probably whatever statute you could prosecute that under, and that's just some evidence of negligence when you don't get a license and it's negligently installed. And the direct testimony was that it never really failed except for this one instance, which Mr. Fletcher testified about. And if that was the end of it, then that would explain why there was, uh, you would expect water at some time to be at the end of the system at some point if there was a lot of water or whatever going through the system. Even ground water can get into those type systems. And as to nuisance, a failure one time does not make a private nuisance, so I'll grant the directed verdict as to all of that also.
Following this ruling, there was a discussion about how to proceed using a special master to determine a legal description of the prescriptive easement. The Rowes' attorney stated that his clients did not have anything new to offer in regard to their claims in their case-in-chief and suggested that the Rowes would be happy to rest and submit a brief on their remaining claims. The Rowes' attorney then rested on the counts and made arguments regarding piercing the corporate veil and punitive damages. The Rowes nonsuited their claim for abuse of process.
Appellant moved for a directed verdict on the counterclaims and third-party complaint against Fletcher. The circuit court denied the trespass-to-chattel and conversion claims, dismissed the abuse-of-process claim, and found no piercing of the corporate veil.
An interim posttrial order was filed November 4, 2016, setting forth the circuit court's oral ruling (1) granting the Rowes' motion for directed verdict; (2) awarding a prescriptive easement to the Rowes; (3) denying appellant's claims for trespass, negligence, and private nuisance; and (4) denying the Rowes' claims against appellant and Fletcher for trespass against chattel and conversion. The circuit court gave the parties until November 8, 2016, to provide the name of an agreed-on third party to provide a description of the easement. A special master was appointed by order filed December 6, 2016. A final order was filed May 30, 2017, containing a legal description of the prescriptive easement, which was granted in perpetuity to run with the land. A timely notice of appeal was filed on June 22, 2017.
III. Applicable Law
The Arkansas Supreme Court has stated the following:
A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. See Paul Jones Jr., Arkansas Titles to Real Property §§ 714, 1499, at 443, 906-09 (1935 & Supp. 1959); Neyland v. Hunter , 282 Ark. 323, 668 S.W.2d 530 (1984) ("Prescription is the acquisition of title to a property right which is neither tangible nor visible (incorporeal hereditament) by an adverse user as distinguished from the acquisition of title to the land itself (corporeal hereditament) by adverse possession."). Like adverse possession, "prescriptive easements ... are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." 25 Am. Jur. 2d Easements and Licenses § 45 (1996) ; Potts v. Burnette , 301 N.C. 663, 273 S.E.2d 285 (1981). In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. Manitowoc Remanufacturing, Inc. v. Vocque , 307 Ark. 271, 819 S.W.2d 275 (1991) ; Neyland v. Hunter , supra ;
*526 Teague v. Raines , 270 Ark. 412, 605 S.W.2d 485 (1980). This court has said that the statutory period of seven years for adverse possession applies to prescriptive easements. Neyland v. Hunter , supra ; Duty v. Vinson , 228 Ark. 617, 309 S.W.2d 318 (1958) ; Brundidge v. O'Neal , 213 Ark. 213, 210 S.W.2d 305 (1948). That statutory period for adverse possession is set out in Ark. Code Ann. § 18-61-101 (1987). See also Ark. Code Ann. § 18-11-106 (Supp. 1999) (enacted as Act 776 of 1995).
Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. Stone v. Halliburton , 244 Ark. 392, 425 S.W.2d 325 (1968). Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. Manitowoc Remanufacturing, Inc. v. Vocque , supra ; Fullenwider v. Kitchens , 223 Ark. 442, 266 S.W.2d 281 (1954). Some circumstance or act in addition to, or in connection with, the use which indicates that the use was not merely permissive is required to establish a right by prescription. Craig v. O'Bryan , 227 Ark. 681, 301 S.W.2d 18 (1957). The determination of whether a use is adverse or permissive is a fact question, and former decisions are rarely controlling on this factual issue. Duty v. Vinson , supra ; St. Louis Southwestern Ry. Co. v. Wallace , 217 Ark. 278, 229 S.W.2d 659 (1950) ; Brundidge v. O'Neal, supra. The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. Duty v. Vinson , supra ; Brundidge v. O'Neal , supra ; Stone v. Halliburton, supra.
Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs. , 346 Ark. 354, 363-64, 57 S.W.3d 187, 193-94 (2001). The supreme court further held:
This court has held that when ordinary inspection of the premises by a purchaser, followed by reasonable inquiry, would reveal the existence of a servitude, then that purchaser is charged with notice. Armstrong v. McCrary , 249 Ark. 816, 462 S.W.2d 445 (1971) (citing Hannah v. Daniel , 221 Ark. 105, 252 S.W.2d 548 (1952) ). When a person has knowledge sufficient to lead him or her to a fact, that person will be deemed to know it. Hannah v. Daniel , supra ; Waller v. Dansby , 145 Ark. 306, 224 S.W. 615 (1920). Whether or not an easement is apparent is a question of fact. Diener v. Ratterree , 57 Ark. App. 314, 945 S.W.2d 406 (1997).
Id. at 368-69, 57 S.W.3d at 197.
In an earlier case, this court addressed prescriptive easements as follows:
A purchaser of real estate is charged with notice of an unrecorded easement when the existence of the servitude is apparent upon an ordinary inspection of the premises. Hannah , [supra ]. In Hannah , the court found that at the time Hannah purchased his property there was no physical improvement located on that property which would reasonably make it apparent that a servitude existed. The court stated:
We announced the rule in this language in Waller , [supra ] : 'The general rule is, that whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty as in the case of vendor and purchaser, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding. Or, as the rule has been expressed more briefly, where a man has sufficient information to lead him to a fact, he shall be deemed cognizant of it.'
*527 In French v. Richardson , 246 Ark. 497, 438 S.W.2d 714 (1969), the rule laid down in Hannah was approved, but the court found that the existence of a tower and transmission lines was sufficient to put French on notice of the existence of a servitude. The court then ruled:
Had he exercised his duty to make inquiry he would have easily discovered the existence and conditions of the lease easement. He is therefore charged, under our settled law, with notice of the easement.
This rule has been applied to prescriptive easements. Armstrong , [supra ]. Childress v. Richardson , 12 Ark. App. 62, 64-65, 670 S.W.2d 475, 476 (1984).
IV. Prescriptive Easement
Appellant argues that the circuit court erred in finding that the Rowes had a prescriptive easement when it was uncontroverted that there was no visible indication of those lines on an ordinary inspection of the property. Appellant relies on Childress , supra , where the prior owner may have been aware of the gas line and acquiesced in its use for eleven years prior to the purchase of the property by the owner who discovered the line and brought suit to quiet tile. Id. Appellant emphasizes that this court recognized that a "purchaser of real estate is charged with notice of an unrecorded easement when the existence of the servitude is apparent upon an ordinary inspection of the premises." Id. at 64, 670 S.W.2d at 476.
Appellant argues that Fletcher testified that he was not aware of the location of the septic line until it was unearthed by Maus, and both the Rowes acknowledged that there was nothing to put appellant on notice that their septic field lines were on its property. Maus observed no evidence of the septic pipe before the excavation. Appellant contends that the Rowes' testimony demonstrates that there was no or very little evidence of the claimed easement such as would put it on notice of such a claim. Both the Rowes said that the field lines were buried and not apparent to someone observing the surface, with the possible exception of the end of a pipe or patches of greener grass. This was a question of fact, and appellant contends that the circuit court erred in making its ruling.
However, we hold that the circuit court committed no error in finding that appellant was put on notice of the prescriptive easement. The record reflects that the Rowes openly and adversely possessed the easement for the septic line for the statutory period. The lines were not placed with permission from the property's owner. The system had been there since before 1993, including the field line at issue. The Rowes purchased their property in 2004. In 2005, the Rowes added a leg onto the field line without permission. The Rowes also kept the field lines cleaned out. The field line was visible from at least 2005 as the terminus is above ground and ends in what is essentially a gravel pit to catch any excess condensation. The exposed parts can be seen by a reasonable inspection of the property. Thus, the court properly found that the Rowes established a prescriptive easement under Childress, supra.
V. Motion for Directed Verdict
Appellant argues that the circuit court erred in granting the Rowes' motion for directed verdict on all counts of appellant's complaint and that the circuit court erred in considering the credibility of the evidence of the Rowes' claim of prescriptive easement under the guise of ruling on the directed-verdict motion. In reviewing this issue, we keep the following principles in mind:
In ruling on a motion for directed verdict or a motion for dismissal, the standard is the same: the circuit court *528 must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." Woodall v. Chuck Dory Auto Sales, Inc. , 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001). If the nonmoving party has made a prima facie case on its claim or counterclaim, then the issue must be resolved by the finder of fact. See Swink v. Giffin , 333 Ark. 400, 402, 970 S.W.2d 207, 208 (1998). In evaluating whether the evidence is substantial enough to make a question for the fact-finder, however, the circuit court may not assess the witnesses' credibility. First United Bank v. Phase II , 347 Ark. 879, 902, 69 S.W.3d 33, 49 (2002) ; Swink , 333 Ark. at 403, 970 S.W.2d at 209.
Rutland v. McWhorter , 2016 Ark. App. 163, at 3-4, 485 S.W.3d 722, 724.
Appellant recites the circuit court's reasoning, as set forth above, emphasizing that the circuit court stated that it had reviewed the law, notes, and testimony; that all the issues ran together, and the issue was whether there was a prescriptive easement; that the circuit court did not know what Fletcher could have done until he saw "what he saw" to protect himself because "when you receive property from another, you're bound by what they should have known before they sold it to you"; that the circuit court stated, "And, uh, the Court, of course, has to decide all the credibility ..."; that the field lines had been there for years; that the statutory time had run and that the lines were open and notorious to appellant or its predecessors in title; and that Steve Rowe testified that he cleaned out at the terminus of the field line. Based on finding a prescriptive easement, the circuit court found no trespass and no negligent installation.
Appellant argues that the circuit court improperly jumped from determining whether appellant had presented a prima facie case to ruling on the prescription claim advanced by the Rowes as a defense. Thus, appellant argues that the circuit court erred in granting the motion as to all three counts because appellant had presented a prima facie case on each.
The Rowes contend that the circuit court correctly granted their motion for directed verdict, properly referred to in this non-jury trial as a motion to dismiss. Baxter v. Peters , 2009 Ark. App. 807, 373 S.W.3d 340. We agree. We acknowledge that the procedure at the conclusion of the evidence lacked clarity. We note that all the evidence was before the circuit court when it ruled, and appellant failed to either object or demand an opportunity to put on additional evidence. Appellant must demonstrate prejudice as a result of the circuit court's error. Advanced Envt'l Recycling Techs., Inc. v. Advanced Control Sols., Inc. , 372 Ark. 286, 275 S.W.3d 162 (2008). Thus, when the error was harmless, the circuit court's decision will not be reversed. Hibbs v. City of Jacksonville , 24 Ark. App. 111, 749 S.W.2d 350 (1988).
Any error here was harmless because the circuit court's ruling was based on appropriate legal standards with all the evidence before it. Appellant had rested its case-in-chief. The circuit court had heard all the Rowes' evidence during appellant's case, and the Rowes' rested after dismissing their malicious-prosecution claim. Thus, to the extent the circuit court made credibility judgments, it did so in its role as fact-finder in determining whether the Rowes had proved their prescriptive-easement claim. No additional evidence was presented, and appellant never asserted that it should be.
A. Trespass
Appellant argues that Arkansas's law of trespass requires a physical invasion of a plaintiff's real property that is caused by a defendant and results in damages.
*529 Cross v. W. Waste Indus., 2015 Ark. App. 476, 469 S.W.3d 820. However, because we have affirmed that the Rowes had a prescriptive easement in the property at issue, the elements of trespass necessarily were not met. Thus, we affirm the circuit court's dismissal of appellant's claim for trespass.
B. Negligence
The essential elements of a negligence claim are (1) the existence of a duty on the part of the defendant to conform to a specific standard of conduct to protect the plaintiff; (2) breach of that duty by the defendant; (3) injury to the plaintiff actually and proximately caused by the defendant's breach; and (4) resulting damages to the plaintiff or his property. Cross, supra. Appellant argues that the violation of a government regulation is evidence of negligence, Bishop v. Tariq, Inc. , 2011 Ark. App. 445, 384 S.W.3d 659, as is a violation of a statute. See, e.g. , Berkeley Pump Co. v. Reed-Joseph Land Co. , 279 Ark. 384, 653 S.W.2d 128 (1983).
Appellant contends that it does not matter that the Rowes did not install the field line because they operated, maintained, repaired, and extended it. Appellant claims that the Rowes had a duty to do these things in accordance with Arkansas statutes and regulations governing them. Appellant claims that the Rowes admitted that they breached this duty and admitted that their field lines crossed onto its property. Fletcher discovered gray, foul-smelling water and the field line. Maus observed the water and the field line. Appellant argues that a reasonable jury could conclude that the Rowes' breach of their duty to operate, maintain, repair, and extend their septic system only in accordance with Arkansas law was the actual and proximate cause of the intrusion of the field line and the deposit of wastewater onto appellant's property. Appellant contends that the question of its damages based on the Rowes' negligence should go to the jury. Cozart v. Logue , 2014 Ark. App. 626, 447 S.W.3d 133.
We agree with the Rowes' assertion that the negligence claim was properly dismissed because appellant did not prove that the Rowes owed a duty, that such duty was breached, or that the breach caused damages. Appellant relies on the Rowes' violation of a state statute or regulation to prove negligence, but appellant fails to identify the law on which it relies in its argument before this court. In light of appellant's failure to establish any violation on the Rowes' part or any link between the violation and the alleged injury, we cannot say the circuit court erred in finding that appellant failed to make its prima facie case.
C. Nuisance
This court stated that nuisance is defined as
conduct by one landowner that unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property that disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property. Goforth v. Smith , 338 Ark. 65, 991 S.W.2d 579 (1999). The concept of nuisance encompasses a number of harms, including odors, noise, dangerous activity, and contamination of surface water and groundwater, as well as other pollution and contamination. Southeast Arkansas Landfill, Inc. v. State , 313 Ark. 669, 858 S.W.2d 665 (1993). The general rule is that, in order to constitute a nuisance, there must be an intrusion that results in physical harm, as distinguished from unfounded fear of harm, which must be proven to be certain, substantial, and beyond speculation and conjecture. Goforth, supra.
Cross , 2015 Ark. App. 476, at 4, 469 S.W.3d at 823 ; Ozark Poultry Prods., Inc. v. Garman , 251 Ark. 389, 472 S.W.2d 714 (1971)
*530 (a private nuisance may consist of an ill-drained privy or garbage pile emitting offensive odors).
Appellant argues that Arkansas Code Annotated section 14-236-112(a) (Repl. 1998) requires a permit to extend sewage field lines. Appellant claims that the Rowes' system was installed in violation of this law. Appellant contends that the Rowes' operation, maintenance, and extension of their unapproved, noncompliant septic system interferes with its use and enjoyment of its property.
The Rowes contend that the circuit court properly held that a small puddle of water in one corner of a large and unfrequented acreage was not enough to constitute a private nuisance under Cross, supra. We agree. Further, appellant failed to link the Rowes' failure to obtain a permit with interference with appellant's use and enjoyment of its property. The circuit court concluded that the one-time event of gray, puddled water did not constitute a prima facie case for a consistent, recurring, or permanent nuisance, and we affirm.
Affirmed.
Virden and Vaught, JJ., agree.