Cite as 2024 Ark. App. 509

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CV-23-250

| | | |
|---|---|---|
| LAYMAN LANE, LLC | | Opinion Delivered October 23, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION |
| V. | | [NO. 60CV-20-2804] |
| SUBURBAN SEWER IMPROVEMENT DISTRICT #239 | | |
| | | HONORABLE ALICE S. GRAY, JUDGE |
| | APPELLEE | |
| | | REVERSED |

**CINDY GRACE THYER, Judge**

Layman Lane, LLC (Layman), appeals a Pulaski County Circuit Court order awarding damages to Suburban Sewer Improvement District #239 of Pulaski County (SSID or District) on an unjust-enrichment theory. We reverse.

I. *Facts and Procedural History*

SSID was formed in February 1977 under Act 41 of 1941 for the purpose of constructing within the District a complete sanitary sewer system to serve the real property located within the District. The District is approximately forty to sixty acres and includes only those properties in the Spring Valley Manor subdivision. Eventually, faced with increased environmental regulation and needed system maintenance, SSID realized it needed to either build a treatment plant or build a line to tie on to the City of Little Rock

sewer system. Faced with these two options, the District decided the tie-on option would be the better long-term solution.

In order to tie on to the City's sewer system, SSID needed to repair and upgrade some of its existing lines and was required by the City to build a new main line, also known as a trunk line,[1] with the capacity to serve everyone on the watershed. The District determined that this would be financially feasible for the District only if it were allowed to collect connection fees from future tie ons.

During this time, the Capitol Lakes Sewer Property Owners' Improvement District No. 148 of the City of Little Rock (Capitol Lakes or District 148) approached SSID because it was preparing to build a subdivision adjacent to, and to the north of, the District and indicated a need to tie on to SSID's sewer line. The parties agreed that it would be in the best interest of both parties for SSID to build an extension to allow Capitol Lakes to tie on to the system and for Capitol Lakes to share the costs of the construction of the new main line.[2]

---

[1]There are three parts to a sewer system: service or feeder lines, collector lines, and the trunk—or main—line. Service lines transport sewage from a house and feed into a collector line that ultimately carries the sewage to a main or trunk line, which is the primary line.

[2]This was advantageous to SSID because the assessments for the property owners in the District would decrease as a result of Capitol Lakes' assuming a percentage of the debt for construction.

On the basis of their agreement, in May 2000, SSID entered into a sewer-line-extension contract with Capitol Lakes.[3] As part of the agreement, SSID agreed to build and install a main-line extension to connect Capitol Lakes to its sewer system in exchange for Capitol Lakes' agreement to pay SSID an annual assessment of $63,205 for thirty years or until the debt financing was retired.[4] Pursuant to the agreement, ownership of the installed sewer lines was to remain vested in SSID, its assigns, or the City of Little Rock as applicable, and Capitol Lakes was given the right to connect any sanitary sewer-collection lines built within its boundaries to the main line or any sanitary sewer collector previously constructed by SSID. Capitol Lakes further agreed that any "tie-on" or "connection" fee charged to any outside third-party properties or property owners to tie on to any of the sewer lines in District 148 would be chargeable and collectible by SSID, not District 148, and must be used as a prepayment to the outstanding balance of the project financing, to reduce payments to be paid by the parties toward the encumbrance, or a combination of both, as SSID determines. Thus, Capitol Lakes assigned its right to these fees to SSID. The contract bound the parties, their successors, and assigns.

---

[3]The parties attempted to merge into a consolidated district but legally could not do so.

[4]The parties referenced this $63,000 amount at trial; however an addendum to the extension contract modified the annual payment to $72,432 to account for increased construction costs. This amount was based on acreage and the percentage of the line Capitol Lakes occupied on the new construction—about half the original construction, plus all the main-line extension.

Later that year, SSID entered a sewer-line-extension contract with the Wilson family for property it owned outside the District. SSID allowed the Wilson family to tie on to the sewer line in exchange for a one-time $250,000 connection fee. The parties agreed that the property would not become a part of the District, nor would the property be subject to the levy of any other assessment or fee to be charged by the District. Ownership of the installed sewer line would vest in the District. The Wilson family further agreed to assign its right to any "tie-on" or "connection" fee to the District.

In 2007, Rocket Properties, LLC, approached SSID seeking to tie its new subdivision (Woodlands Edge) into SSID's sewer district. Woodlands Edge is located outside the District. After negotiations, in October 2007, SSID entered into a sewer-line-connection contract with Rocket Properties, LLC, to allow it to connect to the sewer line in exchange for a one-time payment of $250,000. By contract, the property would not become part of the District, nor would the property be subject to the levy of any other assessment or fee to be charged by the District, and the ownership of the sewer line would remain vested in the District. Like the Wilson family, Rocket Properties further agreed to assign its right to any tie-on or connection fees to SSID. The contract between SSID and Rocket Properties provided that the fees would be chargeable and collectable by the District and not by Rocket Properties.

Rocket Properties also owned approximately one hundred acres of land adjoining Woodlands Edge that was not included in the $250,000 connection-fee price. The parties agreed that Rocket Properties could connect this property to the sewer line upon a payment

4

of $2,000 per lot connected, provided that all connections would be only for single-family residential or associated use.[5] However, if Rocket Properties was required to upsize a collector line to serve another land tract not owned by Rocket Properties, Rocket Properties would have the right to charge a tie-on fee for additional costs incurred for the upsizing.

These projects were ultimately completed, and thereafter, SSID transferred the entirety of its system to Little Rock Wastewater. This transfer occurred in May 2010[6] and was "subject to the District's lawful rights to continue levying and collecting assessments and sewer line connection fees to retire the District's bond indebtedness and otherwise." Upon transfer of its system to Little Rock Wastewater, SSID was no longer actively maintaining or operating its sewer system. However, to pay down indebtedness, SSID still collected its annual assessments from Capitol Lakes pursuant to their October 2007 contract.

In late 2017, Layman Lane negotiated with SSID to connect Layman Lane's sewer lines for its new residential development (Copper Run) to what Layman Lane then understood to be SSID's system. The connection point is at the upper corner of the geographic boundaries of the Capitol Lakes District—pipes then and now owned and maintained by Little Rock Water Reclamation Authority (LRWRA), formerly Little Rock Wastewater. Those negotiations ceased in December 2017 when Layman Lane discovered that SSID no longer owned or maintained the sewer lines to which Layman Lane sought to

---

[5]It is unclear if any of these lots were ever developed or tied on to the SSID system.
[6]There was testimony that some of the sewer lines were connected to and transferred to Little Rock Wastewater prior to 1994.

5

connect and that its Copper Run development was not within SSID's geographical boundaries.

In June 2018, Jean Block, LRWRA chief legal officer, sent an email to the attorneys for Layman Lane and SSID. She stated that LRWRA had received correspondence from the parties regarding SSID's lines. The email recognized that SSID had reserved the right to collect connection fees in the bill of sale transferring its system to LRWRA but stated that LRWRA had neither been involved in nor been a party to any effort by SSID to levy and collect such a fee from a developer and did not intend to do so. However, Block's email stated:

> 4. Before a developer or SSID may tie into a LRWRA-owned line, that developer or SSID must comply with a process that is akin to LRWRA's "Developer-funded" process which is managed by LRWRA's Engineering Program Supervisor, Vince Hotho. I believe that you are familiar with that process. Once a developer has met the requirements of that process, including providing the required documentation, LRWRA will issue a letter to the developer accepting the lines and authorizing the connection to LRWRA system. Assuming that the requirements of that process are met for the *Copper Run* project, LRWRA will accept those lines and authorize that connection.

In September 2018, LRWRA, in response to a request by Layman Lane to connect Copper Run to LRWRA's sewer system, informed Layman Lane that approval was being granted to construct and install a sewer-main extension with the approval conditioned on certain conditions. Paragraph 12 of that letter stated:

> 12. Applicant agrees to obtain all necessary permits and approvals from all other governing agencies including any applicable improvement District prior to the start of construction. **APPLICANT SHOULD MAKE AN INDEPENDENT DETERMINATION** of the existence, status or amount of any fees which may be due to third parties (such as improvement Districts) which may be owed to the third party

6

in addition to those fees due to LRWRA for sewer lines and or sewer facilities installation proposed by applicant. LRWRA and the Little Rock Water Reclamation Authority have no such information of amounts due third parties, if any, and assume no responsibility for furnishing such information to Applicant and expressly disclaim any such duty or liability of any nature whatsoever arising out of Applicant's failure to make that determination.

Phase 1 of the Cooper Run subdivision sewer system was completed and transferred to LRWRA on February 22, 2019. Layman Lane connected to LRWRA's sewer system without paying any connection fee to SSID.[7]

On January 22, 2020, an attorney for SSID contacted Layman Lane regarding its failure to timely pay a connection fee to SSID. SSID informed Layman Lane of its agreement with LRWRA and that the transfer of SSID's system to LRWRA was subject to SSID's rights to collect sewer-line-connection fees. The letter explained that LRWRA's acceptance of Layman Lane's sewer system did not relieve Layman Lane of its obligation to pay SSID's assessments and sewer-line-connection fees as stated in the bill of sale to LRWRA. The letter further stated that the Copper Run subdivision's use of SSID's lines had triggered the obligation to pay SSID tie-on fees. The letter went on to remind Layman Lane that LRWRA had told Layman Lane in the September 27, 2018 letter that Layman Lane was responsible for determining what, if any, fees were owed to third parties. Thus, SSID asserted that Layman Lane was aware of its obligation to pay SSID a connection fee. SSID then stated that, given the costs, outstanding obligations, and demand for use of the lines, the district commissioners had settled on a connection fee of $1,750 per residential lot.

---

[7]LRWRA did not charge Layman Lane a connection fee to connect to its system.

Two other phases of the Copper Run sewer system were thereafter completed and transferred to LRWRA. Again, no fees were paid to connect these lines to the LRWRA system.

On April 20, 2020, SSID sued Layman Lane on the theory of unjust enrichment. It alleged that Layman Lane benefited from the sewer infrastructure SSID had constructed and for which it continued to pay. It asserted that SSID had expected to be paid a connection fee for the connection of Layman Lane's development to SSID's system. It further asserted that Layman Lane was told prior to construction that connection fees would be required before it could connect its development to SSID's system. It claimed that the reasonable value of the benefit received by Layman Lane was approximately $1,750 per residential unit served by its sewer lines, or $306,250.

Layman Lane answered,[8] offering a general denial and pleading a multitude of affirmative defenses, including the defense of failure to name a necessary party.

A bench trial was held on September 8, 2022. Prior to trial, the parties stipulated to the following facts:

> 1. [SSID] had previously owned the sewer lines located in the Capitol Lakes improvement district boundaries to which [Layman Lane] connected its sewer line as well as the lines within [SSID's] boundaries.

> 2. [SSID] transferred ownership of the sewer lines to Little Rock Water Reclamation Authority on May 24, 2010 pursuant to a Bill of Sale and subject to the terms and reservations in the Bill of Sale.

---

[8]Layman Lane first filed a motion to dismiss and then a motion for summary judgment, which were both denied by the circuit court.

3. At the time [Layman Lane] connected to the sewer lines, [SSID] had already transferred the lines to Little Rock Water Reclamation Authority and owned only the rights or interests which were reserved by the bill of sale referenced in Fact Stipulation No. 2.

4. The residential subdivision owned and developed by [Layman Lane] which is at issue in this lawsuit is not within the district boundaries of SSID #239.

5. [Layman Lane] received a letter dated September 27, 2018 from Vincent Hotho, P.E. of Little Rock Water Reclamation Authority which set forth the conditions under which [SSID's] sewer line connection was approved.

6. [Layman Lane] did connect sewer lines to the sewer lines located in Capitol Lakes district boundaries referenced in Fact Stipulation No. 1 and 2 some time between September 2018 and March 2019.

Three witnesses testified at trial: Mark Lyons, SSID commissioner; Cathi Watkins, SSID commissioner and treasurer; and Scott Hurley, member of Layman Lane, LLC.

Mark Lyons testified regarding the formation of SSID; the history of its relationship with Capitol Lakes, the Wilson family, and Rocket Properties; and the development of the sewer system up to its connection and transfer to LRWRA. He then elaborated on the transfer of the pipes to the LRWRA, SSID's reservation of rights in the bill of sale, its negotiations with Layman Lane, and the procedure whereby SSID determined a reasonable connection fee. He stated that SSID undertook a bond indebtedness of over two million dollars for the purpose of updating and installing the sewer lines within SSID and Capitol Lakes. He stated that, while Capitol Lakes is required to pay a portion of that debt, SSID is obligated on the entire amount.

As for the amount requested, Commissioner Lyons testified that SSID was asking Layman Lane to pay a connection fee of $1750 per lot. He stated that this amount

9

represented approximately 20 percent of what the property owners in the District would pay against the principal balance of the bond. He stated that, in coming up with that amount, the commissioners looked at the remaining debt and what they had previously charged other properties as tie-on fees. Because the system was close to being paid off, they agreed to accept an amount lower than the $2,000 per lot they had previously assessed as connection fees.

He admitted that SSID had not paid any fee to connect to LRWRA's main line, that the Copper Run subdivision was not within the boundaries of the District, and that LRWRA owned the lines when Copper Run tied on to them. He believed, however, that LRWRA should not have allowed Layman Lane to tie on to the system until the connection fee had been paid to SSID. Finally, he admitted that if SSID collected the $300,000 from Layman Lane, SSID would have collected more than what was remaining on the indebtedness, and that money would be refunded to the residents of the District after the payment of all remaining expenses.

Cathi Watkins testified that the residents of the District paid annual assessments of $750–$800 per lot. Given that three years had passed since the Copper Run development had been connected to the system, the assessed connection fee on Copper Run would be a little less than the three years of assessments. Regarding the District's expenses, Watkins testified that it still had attorney fees, assessor fees, and the large bond payment each year, but she admitted that the District no longer had any expenses for maintaining or operating the sewer system, all of which is currently performed by LRWRA. She then stated the debt owed on the bond was approximately $1 million in 2019 when Layman Lane connected to

10

the sewer system and that there was only about $450,000 left owing on the bond. However, she claimed the District had additional financial responsibilities because it was still obligated to close the sewer pond. She noted that the District collected approximately $85,000 a year in assessments.

Scott Hurley testified that the Copper Run subdivision is located within the city limits of the City of Little Rock and is required to have sewage disposal. He stated that Layman Lane had been advised by LRWRA that it needed to make an independent determination as to any fees or approvals that were necessary from any improvement districts. He testified that Layman Lane had negotiated with SSID until it realized that the Layman Lane property—the Copper Run subdivision—was not within the District's geographic boundaries and that the pipe to which Layman Lane was connecting was actually owned by LRWRA. Thus, Layman Lane, under its independent determination, believed no such fee was required. Hurley noted that Copper Run residents are billed for their sewer fees by the City of Little Rock, and the City of Little Rock maintains the system. He also noted that, although there were numerous improvement districts downstream from the Copper Run development, Copper Run had not been required to paid anything to any of those districts to connect to the sewer system.

Hurley further testified that Layman Lane had to run approximately four thousand linear feet of sewer pipe to connect to the LRWRA lines. He said that, in addition to the easements they had to purchase, it cost approximately $400,000 to run the sewer to the property lines, another $200,000 to run it throughout the first phase of lots, and another

11

$175,000 for a pump station. When Layman Lane turned the system over to LRWRA, it did not retain any right to later charge anybody a fee to connect to the system, which now included the lines it had constructed and financed.

After hearing all the evidence, the circuit court found for SSID on its claim for unjust enrichment. More specifically, the court found:

5. District 239 was formed in 1977 under Act 41 of 1941.

6. Throughout the years of its existence, District 239 has constructed and maintained sewer infrastructure at a substantial expense.

7. [District 239] previously owned the sewer lines located in the Capitol Lakes improvement district boundaries as well as the lines within District 239's boundaries.

8. District 239 transferred ownership of its sewer lines to Little Rock Wastewater Reclamation Authority on May 24, 2010 pursuant to a Bill of Sale which reserved to District 239 the right to continue levying and collecting assessments and sewer line connection fees.

9. Layman Lane is the developer of the Copper Run subdivision which has been approved for a total of 175 residential lots, some of which have already been sold and had residences built.

10. Layman Lane was advised by Little Rock Water Reclamation Authority via letter dated September 27, 2017 from Vincent Hotho containing the following language:

[Layman Lane] agrees to obtain all necessary permits and approvals from all other governing agencies including any applicable Improvement District prior to start of construction. APPLICANT SHOULD MAKE AN INDEPENDENT DETERMINATION of the existence, status or amount of any fees which may be due to third parties (such as improvement Districts)"

11. Layman Lane entered into negotiations with District 239 with respect to the amount of a connection fee to be paid and terminated negotiations without coming to an agreement.

12. A sewer connection was necessary for the development of the Copper Run subdivision.

13. Between September 2018 and March 2019, Layman Lane made a connection to the sewer lines previously owned by District 239 and which were subject to their reservation of rights.

14. Layman Lane did not make any payment to District 239 in exchange for the connection to the sewer lines.

15. The average annual assessment of residents in District 239 which are connected to the sewer lines is between $700-$800.

16. District 239 has charged other developers for connection to the sewer lines in amounts ranging from one-time fees of $250,000 to annual fees of $63,205 as well as an agreement with a connecting owner for the per lot charge of $2,000 per lot above and beyond the number initially contemplated.

17. As of the time of this judgment, Layman Lane has been connected to the sewer lines for over three and a half years.

The court then entered, in part, the following conclusions of law:

18. District 239 has authority under Ark. Code Ann. § 4-92-210 to, among other things, establish rules and regulations for the transaction of the district's business and for the services, use, and right to use of its facilities or services, or both.

19. District 239 has authority under Ark. Code Ann. § 14-92-220 to sell or lease its improvements to any other corporation, organization, or person.

20. Under the authority the above referenced statute, District 239 had a right to charge connection fees to others in exchange for allowing its connection to and use of its sewer lines.

21. District 239's rights to charge connection fees were validly reserved in the Bill of Sale which otherwise transferred the lines to Little Rock Water Reclamation Authority.

22. By virtue of District 239's construction of the sewer lines and Layman Lane's connection to the lines, District 239 provided something of value to Layman

13

Lane, the value being a functioning sewer connection for the Copper Run subdivision.

23. Based on its statutory rights with respect to the connection fees and explicit reservation of those rights, District 239 had a valid and reasonable expectation to be paid for Layman Lane's connection to the sewer lines.

24. Based on the September 27, 2017 letter from Vincent Hotho to Layman Lane and the testimony of both parties as to the negotiations on the amount of a connection fee, it is clear that Layman Lane was aware of District 239's expectation of payment.

25. As Layman Lane received a valuable and necessary sewer connection for its subdivision for which it did not pay in spite of its awareness of District 239's valid and reasonable expectation for payment, the Court finds that Layman Lane has been unjustly enriched.

26. District 239's evidence and testimony establishe[d] the sought amount of $306,250 is representative of an average assessment of benefits of 175 lots for slightly less than two and a half years. The Court finds this to be a reasonable approximation of Layman Lane's gain.

The circuit court also found that Layman Lane had failed to meet its burden of proof as to its affirmative defense of failure to name a necessary party. The court then entered a judgment in favor of SSID in the amount of $306,250 plus postjudgment interest of $61.58 a day from the entry of the judgment.

Layman Lane timely filed a notice of appeal. On appeal, it argues (1) that SSID provided no benefit to it that would support a claim for unjust enrichment; (2) that SSID had no statutory authority to demand a connection fee for a system it did not own and could not have a "reasonable expectation of payment"; (3) that SSID had an express contract and statutory rights that provided it a full recovery under its bill-of-sale reservation; (4) that the bill of sale did not reserve to SSID the right to negotiate new connection fees on property it

14

no longer owned; (5) that SSID's "evidence" of damages was based on testimony that was incompetent, speculative, not comparable in character, and not based on actual restitution; and (5) that the failure to join LRWRA as a party exposes it to potential double liability. Because we conclude that Layman Lane was not unjustly enriched by its connection to the LRWRA sewer system without paying a connection fee to SSID, we reverse.

## II. *Discussion*

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Peregrine Trading, LLC v. Rowe*, 2018 Ark. App. 176, at 1, 546 S.W.3d 518, 520. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Id.* at 1–2, 546 S.W.3d at 520.

The issue of unjust enrichment is a question of fact, and for a court to find unjust enrichment, a party must have received something of value to which the party is not entitled and which the party must restore. *Grayson & Grayson, P.A. v. Couch*, 2023 Ark. App. 479, 678 S.W.3d 789. It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Adkinson v. Kilgore*, 62 Ark. App.

247, 970 S.W.2d 327 (1998). There also must be some operative act, intent, or situation to make the enrichment unjust and compensable. *Grayson, supra.*

A circuit court that finds unjust enrichment uses its equitable power to impose a quasi contract, or contract implied in law, in order to do justice. *Id.* The underlying principle is that one person should not unjustly enrich himself or herself at the expense of another. *Id.* The basis for recovery under this theory is the benefit that the party has received, and it is restitutionary in nature. *Id.* Unjust enrichment is an equitable principle invoked to render a situation fair under the circumstances. *Id.* However, even where a party benefits from a particular transaction, he is not subject to a claim for unjust enrichment unless his benefit was truly unjust under the circumstances. *Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-S., LLC,* 2015 Ark. App. 229, 460 S.W.3d 308; *see also Lewis v. AT&T Mobility,* 2011 Ark. App. 756, 387 S.W.3d 234; *Cent. Ark. Found. Homes v. Choate,* 2011 Ark. App. 260, 383 S.W.3d 418; *Stevens v. Heritage Bank,* 104 Ark. App. 56, 289 S.W.3d 147 (2008).

Layman Lane first argues that SSID failed to present any evidence that SSID had provided any benefit to it. It claims that, by the time it had connected to the sewer system, SSID had transferred its ownership interest in the sewer lines to LRWRA, and SSID had not provided any services, repairs, or maintenance with regard to its previously owned infrastructure since 2010. Thus, LRWRA was the only entity providing Layman Lane with a benefit.

SSID, on the other hand, argues that it reserved the right to charge a connection fee in its bill of sale. It claims that it reserved that right because it overbuilt the system with the

understanding that it would be allowed to recoup some of its financial investment through the collection of connection fees. To allow Layman Lanes to connect to the system without paying the fees allowed it to unfairly benefit from SSID's substantial investment.

Layman Lane disputes SSID's claim that it had the authority to assess the connection fee; but even if it did have that right, Layman Lane asserts that the present action was not brought to collect the fee but was brought to collect the "value of the sewer connection." And because SSID was no longer operating the sewer system at the time of the connection, it could not have provided any sewer service to Layman Lane. Thus, the only item of value received by Layman Lane was LRWRA's permission to connect to sewer services provided by and owned by LRWRA.

Here, the circuit court found that the sewer lines remained subject to SSID's rights to charge a connection fee under the bill of sale. However, the bill of sale did not give SSID the right to either grant or deny access to LRWRA's sewer system. Thus, SSID simply had no authority to provide sewer services to Layman Lane. As a result, the court's finding that SSID provided a "functioning sewer connection for the Copper Run subdivision" was incorrect.

In light of the record before us, we conclude that Layman Lane received nothing of value from SSID. At the time of connection, SSID had transferred all its rights and ownership in the system to LRWRA. The only thing it arguably retained was the right to collect a connection fee. But because SSID did not retain the corresponding right to control

17

who could or could not be connected to the system, it could not provide Layman Lane with anything. Thus, SSID could not bestow any benefit on Layman Lane.

In essence, what SSID argues here is that, prior to transferring ownership of its sewer system to LRWRA, SSID upgraded (or perhaps overbuilt) its system—with the expectation that it could offset its own costs of construction by charging a connection fee to other developments for tying on to its system. And before it transferred the system to LRWRA, it was able to enter contracts with other subdivisions to do just that. However, when it transferred its system to LRWRA, its ability to contract with other developers evaporated because it no longer had anything of value to offer.

The Restatement (Third) of Restitution and Unjust Enrichment discusses this very situation: If benefits were conferred before a promise of counter-performance had been obtained, in the context of a prospective exchange that the recipient was still free to reject, the result is a form of uncompensated enrichment that is neither unjust nor unjustified. Precontractual performance in such a case rests on a self-interested calculation by which the anticipated reward to the performing party is the enhanced likelihood of a future return. If anticipated return is not realized—without fault on the part of the other party—there is no more question of unjust enrichment than a case where, with neither fraud nor warranty by the seller, a buyer pays more for something than it later proves to be worth. Restatement (Third) of Restitution and Unjust Enrichment § 30(c), Westlaw (database updated October 2024).

Here, SSID made a self-interested calculation to expend money to enhance its system in the hopes that it would be able to enter into a contractual relationship with third parties.

That was a calculated risk. It was able to recoup some of its expenses through its agreements with Rocket Properties and the Wilson property before it transferred the system. Layman Lane, however, refused to enter into a similar contract because SSID had already transferred its property and had nothing further to offer Layman Lane. While Layman Lane did indirectly and freely benefit from the improvements SSID made to the lines, the benefit was neither unjustified nor unjust. SSID had transferred its entire system to LRWRA. As part of the bargain, SSID retained an unenforceable right to collect a connection fee for subsequent connections. SSID cannot, through unjust enrichment, force Layman Lane to subsidize its decision.

Unjust enrichment is an equitable principle invoked to render a situation fair under the circumstances. While at first glance the circuit court's finding appears equitable, a more considered review reveals otherwise. For example, counsel for SSID conceded at oral argument that SSID's authority to collect a connection fee, if any, would end once its bond indebtedness had been retired. Given the evidence before this court, this date is imminent, if not already passed. Thus, SSID would not be permitted to collect a connection fee from any subdivision connecting to LRWRA's sewer system after that date—no matter how closely in time to Layman Lane's connection—despite also receiving the "benefit" of SSID's upgraded pipes. Equity prevents us from treating these two entities differently.

Moreover, we note that the negotiations between the parties with respect to the at-issue fees ceased in late 2017, and SSID waited until January 2020 to send the formal demand letter. In other words, for reasons unknown, SSID sat on its rights for over two

years, ultimately waiting until April 2020 to file suit—*after* Layman Lanes had constructed approximately four thousand feet of sewer lines at an expense of approximately $800,000, *after* Layman Lanes had been permitted to connect to the LRWRA system, *after* Layman Lanes transferred ownership of those lines to LRWRA, and *after* the lines were in use by the Copper Run subdivision.

Accordingly, although we agree there was some evidence to support the circuit court's finding of unjust enrichment, on the entire evidence before us, we are left with a firm conviction that a mistake has been committed. As a result, we conclude that the circuit court's finding of unjust enrichment is clearly erroneous. Because we find that there was no unjust enrichment, it is unnecessary to address the remaining points on appeal.

Reversed.

HARRISON, C.J., and GRUBER, J., agree.

*Jeremy B. Lowrey*; and *Don A. Eilbott – Attorney, PLC*, by: *Don A. Eilbott*, for appellant.

*Davidson Law Firm*, by: *Charles Darwin "Skip" Davidson* and *Kathleen Griffin*, for appellee.