SLIP OPINION     Cite as 2017 Ark. App. 113



# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–16–589

| | |
|---|---|
| DORIS JEAN HONEYCUTT<br>APPELLANT | **Opinion Delivered:** March 1, 2017 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26DR–12–782–III] |
| MICHAEL WAYNE HONEYCUTT<br>APPELLEE | HONORABLE LYNN WILLIAMS, JUDGE |
| | AFFIRMED AS MODIFIED |

## RITA W. GRUBER, Chief Judge

Doris Jean Honeycutt brings this appeal from the Circuit Court of Garland County's March 14, 2016 order modifying the amount of alimony she was awarded in a divorce decree entered on December 20, 2013. She contends that the trial court erred in (1) allowing Michael Wayne Honeycutt to orally amend his pleadings at the hearing on his petition to modify, (2) reducing his monthly alimony obligation, and (3) improperly setting off arrearages.[1] We affirm as modified in this opinion.

The parties' decree of divorce was entered on December 20, 2013. In Paragraph 3, the court ordered Mr. Honeycutt to pay monthly alimony of $1700 beginning on January 1, 2014, and ordered Ms. Honeycutt to "apply for social security disability and . . . keep [Mr. Honeycutt] informed of the status of the application at all times." Elsewhere in the decree, the parties were ordered to equally split a 2012 tax refund if there should be one. The decree

---

[1]This is a one-brief case: Mr. Honeycutt has not filed a brief.

also reflected Mr. Honeycutt's agreement to pay the IRS if the parties owed any amount, pay all debts associated with the parties' Chapter 13 bankruptcy, and continue providing medical insurance for Ms. Honeycutt "so long as COBRA continues." The parties agreed to execute documents necessary for transferring titles of vehicles, boats, 4-wheelers, and trailers that were divided between them. Mr. Honeycutt was awarded his 401(k) account.

On October 5, 2015, Mr. Honeycutt filed a petition to modify alimony, to compel, and for other relief. He alleged that he had faithfully paid alimony until the time of "a significant change of circumstances" in his income. In the petition, he stated that he had received his last paycheck on August 31, 2015; he had been notified on September 8, 2015, that he would be laid off; and, through no fault of his own, he would no longer be receiving income from his current job. Stating that he was currently seeking new employment and anticipated finding employment by the time of a court hearing, he sought a modification of alimony based on his recent unemployment. He acknowledged his responsibility to make Ms. Honeycutt's $247.86 insurance payments each month. He then stated that he had been left with no available funds to pay the insurance, and had not paid, because of her "refusal to cooperate in completing the income tax return in a timely fashion" and because he "had to pay for a round-trip airline ticket to come to America [from Columbia] to straighten out the taxes." Therefore, he asked the court to find "that the extraordinary expense of round-trip airfare to resolve the taxes should relieve him of responsibility for the insurance for the month of August." Finally, he asked that Ms. Honeycutt be ordered to immediately execute boat titles in compliance with the divorce decree, alleging that she had refused to do so despite



repeated demands.

Ms. Honeycutt responded to the petition and filed a motion for contempt and order to show cause based on Mr. Honeycutt's failure to make any alimony payments since August 2015. On February 18, 2016, the trial court took the parties' testimony at a hearing on all outstanding motions.

By written order of March 10, 2016, the court found that Mr. Honeycutt had lost both his previous employment as an international oil-rig electrician and his $168,000 annual income due to a worldwide economic collapse in the oil-drilling industry; that he had made a good-faith effort to regain employment; that he had married a missionary from Columbia and had resided there for a lengthy period of time; that with his current income of almost zero, he was supporting himself and his family through odd jobs, missionary charity, and his family's charity; and that his IRA's market value was between $200,000 and $280,000. The court also found that

> since the entry of the Divorce Decree, . . . [Ms. Honeycutt] has inherited her father's home and lives with other family members who share the cost of living. The Court further finds that she receives her healthcare through Arkansas' Private Option and that she has failed to apply for social security disability benefits, as promised in the Divorce Decree.
>
> [Ms. Honeycutt] has failed to cooperate with the joint filing of the couple's tax return and has failed to timely provide information to [Mr. Honeycutt] and failed to timely provide titles, as required by the Divorce Decree.
>
> [T]hese failures on behalf of [Ms. Honeycutt] have caused [Mr. Honeycutt] to expend additional attorney's fees and transportation cost for travel from Columbia to the United States. The attorney's fees were proven to be $2500 and the travel cost $2600.

The court determined on the basis of these findings that a substantial change in

circumstances had occurred, and it reduced Mr. Honeycutt's alimony payments from $1700 a month to $800. The court also relieved Mr. Honeycutt of responsibility thereafter to pay funds for Ms. Honeycutt's healthcare. Finding that Ms. Honeycutt was in no position to compensate Mr. Honeycutt for his attorney's fees and travel costs, the court set aside any arrearage that he might owe her and ordered Mr. Honeycutt to begin making monthly alimony payments of $800 on April 1, 2016.

### I. *Whether the Trial Court Erred in Allowing Mr. Honeycutt to Orally Amend his Pleadings to Conform with the Evidence*

Although pleadings are required so that each party will know the issues to be tried and be prepared to offer proof, Arkansas Rule of Civil Procedure 15(b) allows for the amendment of the pleadings to conform to the evidence introduced at trial:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time . . . . If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended in its discretion. The court may grant a continuance to enable the objecting party to meet such evidence.

Ark. R. Civ. P. 15(b) (2016). Thus, absent express or implied consent, the question of whether pleadings may be amended to conform to the evidence is within the sound discretion of the trial court. *Pineview Farms, Inc. v. A.O. Smith Harvestore, Inc.*, 298 Ark. 78, 85–86, 765 S.W.2d 924, 928 (1989). A party should be allowed to amend absent prejudice; an important consideration in determining prejudice is whether the party opposing the motion will have fair opportunity to defend after the amendment. *Id.*

Mr. Honeycutt testified at trial, "I had to make two flights from Columbia back to the U.S." at a cost of about $1300 each, "to settle with Uncle Sam" after Ms. Honeycutt had refused to sign the joint tax return. He explained that in his petition, he had requested a credit of the amount "against the alimony" because it was an unnecessary expense. When shown a copy of the petition, which requested a finding "that the extraordinary expense of round-trip airfare to resolve the taxes should relieve him of responsibility for the insurance for the month of August," he said that he had proofread the petition but unfortunately had not noticed its representation of what he was asking for.

At the completion of his case, Mr. Honeycutt moved to amend the pleading to conform with the proof. Ms. Honeycutt objected, stating that there had been more than sufficient time to amend the pleadings, and claiming surprise and prejudice with no chance for discovery. On appeal, she repeats her claim of prejudice. She argues that Mr. Honeycutt's testimony was the only proof of the tickets' cost and there was no documentary evidence, that there was no discovery on the issue because he did not seek this relief, and that she was in no position to refute his testimony because she had no notice that he would attempt to amend his request for relief.

A trial court's decision regarding the amendment of pleadings to conform to the evidence will not be reversed absent a manifest abuse of discretion, *Ison Props., LLC v. Wood*, 85 Ark. App. 443, 156 S.W.3d 745 (2004), and the party seeking reversal on that ground must show the manifest abuse. *Hickman v. Kralicek Realty & Constr. Co.*, 84 Ark. App. 61, 66, 129 S.W.3d 317, 320 (2003). We do not think that Ms. Honeycutt has met her burden of

5

proving material prejudice or a manifest abuse of the trial court's discretion. Further, we note that although she objected to amending the pleadings, she did not ask for a continuance because of surprise or possible prejudice, as is allowed by Rule 15(b). Therefore, we cannot say that the trial court abused its discretion in permitting the amendment.

II. *Whether the Trial Court Erred in Reducing the Monthly Alimony Obligation*

The decision whether to award alimony is a matter that lies within the trial court's sound discretion; on appeal, this court will not reverse the decision absent an abuse of that discretion. *Delacey v. Delacey*, 85 Ark. App. 419, 429, 155 S.W.3d 701, 707 (2004). The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties in light of the particular facts of each case. *Id.* The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.* The court may also consider the financial circumstances of both parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the parties' income, both current and anticipated; the extent and nature of each party's resources and assets; the amount of income of each party that is spendable; the earning ability and capacity of each party; the property awarded or given to one party, either by the court or the other party; the disposition of the homestead or jointly owned property; the condition of health and medical needs of both husband and wife; the duration of the marriage; and the amount of child support. *Id.*

Ms. Honeycutt argues that the trial court failed to make findings based on the secondary factors set forth in *Delacey*—specifically, each party's financial circumstances, extent

6

and nature of resources and assets, earning capacity, and condition of health and medical needs. Stating that Mr. Honeycutt's retirement account was worth about $280,000 when he petitioned for a reduction in alimony, she points to his testimony that he did not consider withdrawing money from it despite having an ability to do so. She notes her own testimony that at the time of the hearing, with $38 in her checking account, $10 in her savings account and $202 in her IRA, she did not have enough money to make it to the next month. She also points to Mr. Honeycutt's trial testimony that he might have employment as early as his return to Colombia and had been making monthly payments of $904.99 to the bankruptcy trustee until September 15, 2015, when he was granted a discharge.

Ms. Honeycutt does not dispute that there has been a change in circumstances with regard to Mr. Honeycutt's employment and earnings. She disputes the materiality of this change—given the "significant retirement account" available to him, her present and existing need for monthly alimony of $1700, the temporariness of his unemployment situation, and the fact that other expenses he had been paying were extinguished around the same time he was laid off. She asserts that the trial court looked only at the change in earnings from Mr. Honeycutt's standpoint and, in doing so, wholly ignored the secondary factors set forth in *Delacey*. Thus, she concludes that the trial court abused its discretion in reducing the amount of alimony payments.

First, we note that the factors of *Delacey* are simply examples of factors that the trial court may consider in determining alimony. Second, our standard of review is well settled: we review the trial court's findings pertaining to division of property and alimony and affirm

them unless they are clearly erroneous or against the preponderance of evidence. *Sherman v. Boeckmann*, 2016 Ark. App. 567, at 4, ___ S.W.3d ____, ____. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Moore v. Moore*, 2016 Ark. 105, at 4, 486 S.W.3d 766, 770. The appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id.* Due deference is given to the trial court's position to determine the credibility of witnesses and the weight given to their testimony. *Id.*

It is clear from the court's written order that the court considered not only the change in Mr. Honeycutt's income but also the factors that had caused it—including the economic downturn in his employment field, his current sources of income, his good-faith effort to seek new employment, and additional expenditures that were caused by Ms. Honeycutt's lack of cooperation in applying for Social Security disability and signing the parties' joint tax return. There is no indication that the trial court failed to consider, under the particular facts of this case, Ms. Honeycutt's financial need and Mr. Honeycutt's ability to pay. Ms. Honeycutt has not shown that the trial court abused its discretion by making a decision that was arbitrary or groundless. Therefore, we affirm the reduction in the amount of monthly alimony payments.

III. *Whether the Trial Court Erred in Improperly Setting Off Arrearages*

In the trial court's March 10, 2016 order of modification, monthly alimony payments were reduced from $1700 to $800 beginning November 1, 2015. The final paragraph of the order reads as follows:

> The Court finds that [Ms. Honeycutt] is in no position to compensate [Mr. Honeycutt] for his attorney's fees and travel costs and therefore any arrearage

[he] might owe [her] is set aside and [he] will begin his $800 per month alimony payments beginning April 1, 2016.

Ms. Honeycutt complains on appeal that the trial court erred in leaving the March 2016 alimony payment out of the equation of arrearages.

On de novo review of a fully developed record below, when we can plainly see where the equities lie, we may enter the order that the trial court should have entered. *White v. White*, 50 Ark. App. 240, 245, 905 S.W.2d 485, 487 (1995). We do so in this case. Prior to filing his petition, Mr. Honeycutt had not made his $1700 payments in September or October, resulting in a $3400 arrearage. The following March, the court ordered a reduction to $800 a month for November through February, totaling $3200 for those four months. Another $800 accrued for March, totaling $7400 that he owed. The court awarded him an attorney's fee and the cost of airfare for a credit of $5100, which leaves an unpaid arrearage of $2300 and which we reduce to judgment. We therefore affirm the trial court's order as modified.

Affirmed as modified.

KLAPPENBACH and GLOVER, JJ., agree.

*The Applegate Firm, PLLC*, by: *Ryan J. Applegate*, for appellant.

No response.