Cite as 2023 Ark. App. 479

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-20-213

| | |
|---|---|
| | **Opinion Delivered** October 25, 2023 |
| GRAYSON & GRAYSON, P.A.<br>APPELLANT/CROSS-APPELLEE<br><br>V.<br><br><br>DAVID A. COUCH<br>APPELLEE/CROSS-APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION<br>[NO. 60CV-06-9369]<br><br>HONORABLE CATHLEEN V. COMPTON, JUDGE<br><br>AFFIRMED IN PART ON DIRECT APPEAL; REVERSED AND REMANDED IN PART ON DIRECT APPEAL; CROSS-APPEAL DISMISSED |

## KENNETH S. HIXSON, Judge

This appeal arises from a longstanding fee dispute between a law firm, appellant Grayson & Grayson, P.A. (hereinafter referred to as "Grayson"), whose principals are Keith Grayson and Melanie Grayson; and an attorney, appellee David A. Couch. The litigation was initiated by Grayson on August 24, 2006, when it filed a complaint alleging breach of contract and unjust enrichment against David A. Couch, individually (hereinafter referred to as "Couch" or "Couch, individually"), and David A. Couch, PLLC (hereinafter referred to as "Couch, PLLC"), for his failure to pay Grayson its alleged portion of fees collected in

certain settled nursing-home cases.[1]  After a long and complicated procedural history, including a reversal and remand in a prior appeal to this court,[2] a bench trial was held on October 1–3, 2019.  After the bench trial, the Pulaski County Circuit Court entered an order finding that a contract did not exist because the terms were too indefinite and thus denied Grayson's claims for breach of contract and unjust enrichment.  Thereafter, the trial court entered an order denying Couch's motion for attorney's fees.

Grayson now appeals, and on appeal it does not challenge the trial court's ruling that there was no enforceable contract between the parties.  Instead, Grayson argues that (1) the trial court erred in denying its motion to amend the pleadings to conform to the proof to allow Grayson to add two more claims against Couch, and (2) the trial court erred in concluding that its unjust-enrichment claim was unavailable and failed as a matter of law.

Couch cross-appealed and argues that the trial court erred in denying his motion for attorney's fees because he was the prevailing party.

We affirm the trial court's denial of Grayson's motion to amend the pleadings to conform to the proof, but we reverse the judgment and remand the case to the trial court for further consideration of Grayson's unjust-enrichment claim.  Because on direct appeal we are reversing and remanding for further consideration, we decline to address Couch's

---

[1]Couch, PLLC was dismissed from this Pulaski County lawsuit on April 9, 2009, for lack of service of process.  That dismissal was not appealed.  Couch, PLLC subsequently filed a separate lawsuit in Cleburne County Circuit Court against Grayson for unpaid legal fees arising out of a nursing-home claim in the case of Leister Dewey versus Beverly Enterprises.  That litigation is also concurrently on appeal in this court.

[2]*Grayson & Grayson, P.A. v. Couch*, 2012 Ark. App. 20, 388 S.W.3d 96.

argument on cross-appeal concerning the trial court's denial of attorney's fees, and we dismiss the cross-appeal as moot.

I. *Facts and Procedural History*

The dispute between these parties was the subject of a previous appeal in *Grayson & Grayson, P.A. v. Couch*, 2012 Ark. App. 20, 388 S.W.3d 96. Many of the facts and the procedure from 2006 through 2010 can be found in the previous opinion. Of particular importance to this appeal is the status of the various claims when the case was remanded to the trial court in 2012. Couch, PLLC had been dismissed with prejudice from the litigation in 2009 for failure of service of process, and that ruling was not disturbed on appeal. Accordingly, because Couch, PLLC was no longer a party to the litigation, all counterclaims and third-party claims made by Couch, PLLC against Grayson and Keith Grayson and Melanie Grayson, individually, had been dismissed. On remand, the only claims that remained were a claim for breach of contract and a claim for unjust enrichment by Grayson against Couch, individually.

After our remand, a three-day bench trial was held on October 1–3, 2019. Keith Grayson, Melanie Grayson, and David Couch testified at the trial.

Keith Grayson testified that he and his wife, Melanie, had been friends with Couch and Couch's wife and that they socialized. Couch and Darren O'Quinn were partners in a law firm.[3] On September 26, 2003, Couch informed Keith that his law firm was dissolving. Within a few days, Couch had dinner at the Graysons' house, and they discussed Couch

_____

[3]The actual legal relationship between Couch and O'Quinn is not relevant to this appeal.

3

joining their law firm. Keith stated that Grayson's staff was very efficient and well trained on the intake process for nursing-home cases and that he told Couch, "You need to come join us, bring your cases and we will split the fees with you." According to Keith, Couch showed him and his wife all the files he was working on, and Couch "said I have all these files, I don't have a secretary, I don't have an office to work in, I don't have a copy machine, I am not set up." Keith then told Couch that "[they] would plug him right in." Keith stated that Couch is a "rainmaker" and has the ability to generate cases, and he entered into the agreement with Couch because he thought Couch would be a good addition to the law firm. Keith stated that the agreement was for Grayson to provide an office for Couch, that he would bring his cases, and they would split the fees. According to Keith, that night over dinner, Couch stated, "That sounds good I'm looking forward to it, we're going to win some cases, we're going to make some money, and we're all going to be happy, cheers." Keith acknowledged that it would have been much better "had an overall global agreement [been] in writing," but he maintained that they had a binding oral agreement.

Keith also testified that at the time they made the agreement, he was not aware of the existence of Couch, PLLC. Keith said that he only became aware of the PLLC's existence during the first month after Couch moved into the office. Keith testified further:

> I considered my donation to him of overhead as part of the consideration for him coming and practicing and splitting the fees with me. That was just part of it. The part of the consideration that was my staff would be available. . . . My staff would be available to him, we would be able to provide everything he needed to work up his cases and be successful because we were on parallel tracks. I wanted him to be successful because that meant I would. . . . I really didn't care how much work [Couch] did or didn't do. He could do a little or he could do a lot of the work, it really didn't matter to me. My deal with him was bring your cases over and we will split the fees 50/50. If these cases had not settled, [Couch] would have expected me

4

to help him try those cases. But because they settled now [Couch] does not want to pay 50% of the fee.

Keith testified that in the nursing-home cases in which Grayson was claiming entitlement to fees, the cases had been in the early stages of litigation and were settled with minimal work from a litigation standpoint. Keith testified that the fees collected by Couch in those cases were substantial and amounted to hundreds of thousands of dollars in each case. Keith took the position that Grayson is entitled to half of those fees.[4]

Melanie Grayson testified that the agreement with Couch was for Couch to bring his files and come to the firm and be "of counsel," which meant that he would have all the benefits of the firm, including its staff. Melanie testified:

> In exchange for what we were giving him we were going to split the fees on his cases and we were going to split the fees on any cases he generated in the future. We saw [Couch] as a rainmaker. Keith is absolutely correct that that was [Couch's] talent.

Melanie stated that the agreement was with Couch individually, and that she did not know Couch had formed a PLLC until after the deal was done.

David Couch then testified. Couch said that it was his position that there was never an agreement to split fees in the nursing-home cases identified in Grayson's complaint, and that if there was any such agreement, it was with Couch, PLLC, and not Couch individually. Couch stated that "everybody knew from the day I walked in the door that I was David A. Couch, PLLC" and that "David A. Couch wasn't an employee so I was an agent of a disclosed principal." Couch stated that with respect to employment contracts with clients,

---

[4]These former nursing-home residents included Lilly Fiona Hawley, Ruby Dorcas Barnett, Sallie Wegman, Barbara Hepler, Faye and Ronnie Deaver, and Darlene Fairy Richardson.

5

he did not hold himself out as his own PLLC. However, in the pleadings he filed and on his business cards at the front desk of the Grayson law firm, he was identified as David A. Couch, PLLC. Furthermore, when the cases at issue were settled, the fees were deposited with Couch, PLLC's trust account. Couch acknowledged that during his affiliation with Grayson he wrote checks to himself out of the Couch, PLLC account.

With respect to an agreement with Grayson, Couch stated that the first time they discussed it was on October 9, 2003, which was the day after he formed Couch, PLLC. Couch acknowledged that he had recently split with his former law partner, that he needed some help, and "that's why I accepted the Graysons' offer to come over." Couch stated that he brought quite a few cases with him to the firm but that the agreement was for Grayson and Couch, PLLC to split fees *only* on the cases that they *worked on together.* In the cases where Couch solely worked the case himself, Grayson would not be entitled to one-half the fee. Couch maintained that there was no global agreement. He stated further that the Graysons knew he was filing settlement agreements in the cases identified in Grayson's complaint. Couch maintained that Grayson did not work on those cases and therefore, Grayson was not entitled to any of the fees in those cases. Couch acknowledged that, during this time frame, he was using Grayson's resources and staff, including legal assistant Jan Armstrong, who helped him with preparation of pleadings, and that she was being paid by Grayson.

At the close of the plaintiff's case, Grayson moved to amend the pleadings to conform to the proof to add additional claims for breach of fiduciary duty and alter ego. Grayson argued:

The failure to pay attorney's fees that were the result of this case we believe is a breach of fiduciary duty. Mr. Couch was an attorney practicing in the Grayson law firm as "of counsel" and had joint ventured these cases. He failed to compensate the law firm per that arrangement. We contend that's a breach of fiduciary duty. Second point we believe that the evidence clearly supports a cause of action of alter ego. Mr. Couch and his alter ego are holding themselves out at various times indicating that Mr. Couch individually was a member of Grayson and at times Mr. Couch indicated he was a P.A. and there is some evidence showing that he was David A. Couch, PLLC. All of these examples were introduced without objection. We contend that there should be a cause of action for alter ego.

Couch objected, and argued:

I object to both of the requests to amend the pleadings. I was not placed on notice of either of these and also the facts do not support either cause of action. This is a straightforward breach of contract case. I object.

The trial court took the matter under advisement and stated that it would decide at the end of the case whether it needed briefing on the issue.

Couch presented his case for the defense, wherein he gave testimony consistent with his prior testimony. After Couch rested his case, the trial court stated that all motions (including Grayson's motion to amend the pleadings to conform to the proof) would be held in abeyance until the parties had time to brief the issues. Keith Grayson testified briefly on rebuttal. At the close of the case, the trial court stated that "all motions are . . . held in abeyance until I get your pleadings."

As instructed, both parties filed posttrial briefs on November 15, 2019. In Grayson's posttrial brief, it asked that the pleadings be amended to conform to the proof and stated that the evidence supporting breach of fiduciary duty and alter ego was introduced without objection from Couch. Grayson stated, "David Couch had ample opportunity to defend the claims of alter ego and breach of fiduciary duty because they were interwoven into the

7

same facts and circumstances for Plaintiff's claims of breach of contract and unjust enrichment."

In Couch's posttrial brief, he opposed Grayson's motion, asserting that this case had been going on since 2006 and that the attempt to amend the pleadings and add two more claims came for the first time on the day of trial at the close of Grayson's case. Couch further asserted that Grayson did not attempt to add either claim even after Couch, PLLC was dismissed from the case in 2009. Couch argued that he was not on notice that he needed to prepare a defense of either count and that prejudice precluded the granting of the motion. Finally, Couch also argued that he did not consent to try these additional claims because the evidence relevant to these claims is also relevant to the other pleaded issues in the case.

On December 10, 2019, the trial court entered a judgment that denied Grayson's motion to amend the pleadings to conform to the proof and rejected Grayson's claims for breach of contract and unjust enrichment against Couch. The trial court did not attempt to parse the evidence and determine whether the oral contract was between Grayson and Couch, individually, or Couch, PLLC. Rather, the trial court found that there was no enforceable contract at all. The trial court, in pertinent part, made these findings:

> 5. The principals of the Grayson Firm, throughout this litigation and continuing from the witness stand, gave varying explanations of what the basic arrangement was.
>
> . . . .
>
> 6. Mr. Couch consistently contended the agreement was with the PLLC, and it was to share fees in cases "worked on together."
>
> 7. Mr. Couch moved for judgment as a matter of law at the close of the Grayson Firm's case. The motion was renewed at the close of Mr. Couch's case and again at

the close of the Grayson Firm's rebuttal case and was renewed and supported with further argument and citation to authority in Mr. Couch's post-trial brief. That motion must be and is granted.

8. The Grayson Firm, as plaintiff, carried the burden of proving the existence of an enforceable contract, and it failed to do so. This obligation required the Grayson Firm to prove three "essential" elements: an offer was made and accepted; consideration was exchanged; and, critically, "at the time the contract was made, its *essential terms were reasonably certain* and agreed to by both" the Grayson Firm and Mr. Couch. AMI–Civil 2402 (emphasis added). "Essential terms" are reasonably certain when "the terms provide a basis for determining the existence of a breach and for giving an appropriate remedy." AMI–Civil 2407. As *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 277 S.W.3d 562 (2008), put it, the court "cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract. . . . Moreover, the terms of a contract cannot be so vague as to be unenforceable." *Id.* at 491, 277 S.W.3d. at 566.

9. The Grayson Firm failed to present evidence of reasonably certain essential terms of the contract it alleges existed to allow it to recover. There was never any meeting of the minds between the parties. The terms of the oral contract were too vague for a determination of any breach.

10. Any contract that existed was with the PLLC, which was dismissed from this case in an earlier opinion by our Court of Appeals. See *Grayson, P.A. v. Couch*, 2012 Ark. App. 20, 388 S.W.3d 96. Because the contract was unenforceable, there is no need for a discussion about whether the true party to the action was David Couch individually, or David A. Couch, PLLC.

11. Count II of the First Amended Complaint alleges unjust enrichment. The Grayson Firm alleges that Mr. Couch was unjustly enriched by breaching a contract. However, no contract existed to breach as explained above and certainly none with Mr. Couch individually. Therefore, no "operative act, intent, or situation that made the enrichment of [Mr. Couch] unjust and inequitable" exists, AMI–Civil 2445, comment (citing *Hatchell v. Wren*, 363 Ark. 107, 117, 211 S.W.3d 516, 522 (2005)), and the claim fails as a matter of law.

12. Judgment as a matter of law is entered on the unjust-enrichment claim.

13. The Grayson Firm's Motion to Amend the pleadings to conform to the evidence was untimely made and is denied.

9

Wherefore, for the reasons set forth here, judgment is entered in favor of David A. Couch, Defendant, and against Grayson, P.A., Plaintiff, on all claims this 10th day of December 2019.

(Footnote omitted.)

On December 19, 2019, Couch filed a motion for attorney's fees. In Couch's motion, he asserted that, as the prevailing party in a breach-of-contract action, he was entitled to attorney's fees pursuant to Ark. Code Ann. § 16-22-308. On February 6, 2020, the trial court entered an order denying Couch's motion for attorney's fees, finding that the amount charged to Couch was reasonable but that "I exercise my discretion in this matter to deny any request for attorney's fees."

Grayson appealed from the December 10, 2019 judgment entered in favor of Couch. Couch cross-appealed from the February 6, 2020, order denying his motion for attorney's fees.

## II. *Grayson's Direct Appeal*

In Grayson's direct appeal from the judgment, it expressly states that it does not challenge on appeal the trial court's ruling that there was no enforceable contract because of the lack of reasonable certainty of essential terms. Rather, Grayson argues on appeal that this court should reverse and remand the judgment because the trial court erred by refusing to grant its motion to amend the pleadings to conform to proof that Couch breached his fiduciary duty and that Couch and Couch, PLLC were alter egos. It also contends that the trial court erred when it concluded that Grayson could not prevail on its unjust-enrichment claim as a matter of law because there was no enforceable contract.

### A. The Trial Court's Denial of Grayson's Motion to Amend the Pleadings to Conform to the Proof

10

For Grayson's first argument on appeal, it claims that the evidence adduced during the bench trial supported additional claims for breach of fiduciary duty and that Couch had liability as an alter ego of Couch, PLLC. It asserts that because Couch was a member of the Grayson law firm at all times relevant to this lawsuit, he owed a fiduciary duty to the firm and breached that duty by his failure to remit to the firm its share of attorney's fees collected by Couch. Grayson asserts further that the evidence showed that Couch and Couch, PLLC were operating as one entity and acted as alter egos, and therefore, Couch was liable for the acts of his PLLC. Grayson contends that the trial court erred in denying its motion to amend the pleadings to conform to the proof to include these two new claims. Grayson cites *Bailey v. Matthews*, 279 Ark. 117, 649 S.W.2d 175 (1983), where the supreme court stated that a party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. Grayson states that the parties were, or should have been, prepared to try these issues and that the trial court should have allowed the pleadings to be amended to conform to the proof in these regards. We, however, disagree with this argument under the circumstances presented in this case.

Rule 15(b) of the Arkansas Rules of Civil Procedure governs the amendment of pleadings to conform to the evidence:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the

11

pleadings to be amended in its discretion. The court may grant a continuance to enable the objecting party to meet such evidence.

This court will not reverse a trial court's decision regarding the amendment of pleadings to conform to the evidence in the absence of a manifest abuse of discretion. *Middleton v. Middleton*, 2018 Ark. App. 237, 548 S.W.3d 199. A manifest abuse of discretion means a discretion improvidently exercised. *Id.* More precisely, an abuse occurs when discretion is exercised thoughtlessly and without due consideration. *Id.*

A party should be allowed to amend absent prejudice, and an important consideration in determining prejudice is whether the party opposing the motion will have a fair opportunity to defend after the amendment. *Honeycutt v. Honeycutt*, 2017 Ark. App. 113, 516 S.W.3d 750. The decision to grant a motion to amend, while liberal, is still discretionary; amendment is mandatory only when the issue has been expressly or impliedly consented to. *Middleton*, *supra*. If the opposing party timely objects to the amendment, the trial court determines whether prejudice would result or if the case would be unduly delayed by the amendment. *Gregory v. Gregory*, 2013 Ark. App. 57, 425 S.W.3d 845. The failure of the opposing party to seek a continuance is a factor to be considered in determining whether prejudice was shown. *Id.* However, we will not infer consent to conforming the pleadings to the proof merely because evidence relevant to a properly pled issue incidentally tends to establish an unpled one. *Id.*

Applying these standards, we conclude that the trial court committed no abuse of discretion in denying Grayson's motion to amend the pleadings to conform to the proof. Grayson filed this lawsuit in 2006 and did not make its motion until after it rested its case on the day of trial more than thirteen years later. We observe that a claim for a breach of

12

fiduciary duty is significantly and substantively different from a claim for breach of contract. A person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages. *Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 948 S.W.2d 388 (1997). But a person standing in a fiduciary relationship may be held liable for any conduct that breaches a duty imposed by the fiduciary relationship, and it follows that, regardless of the express terms of an agreement, a fiduciary may be held liable for conduct that does not meet the requisite standards of fair dealing, good faith, honesty, and loyalty. *Id*. Moreover, Grayson's claim of alter ego, wherein it asserted that Couch was liable for the acts of Couch, PLLC because they were operating as a single entity, should have been raised, at the latest, after the PLLC was dismissed from the case in 2009 to allow Couch to prepare and present a defense. As Couch notes in his brief, both of the claims Grayson sought to add could have been raised in Grayson's original complaint or amended complaint in 2006; they could have been brought after Couch, PLLC was dismissed from the case in 2009; or they could have been raised after our reversal of summary judgment and our remand for further proceedings in *Grayson*, 2012 Ark. App. 20, 388 S.W.3d 96. Much of the same proof was presented to the trial court when it granted the parties' cross-motions for summary judgment in 2010, which we discussed at length in our 2012 opinion in *Grayson*, *supra*. Grayson thus had plenty of time to amend its pleadings to include these additional claims but failed to do so in a timely fashion.

Moreover, we agree with Couch that he did not impliedly consent to try Grayson's purported breach-of-fiduciary-duty and alter-ego claims. The proof that Grayson cites in

13

support of those claims—evidence that Couch failed to fulfill his obligations as a member of the firm and also held himself out as Couch, PLLC—was also relevant to the breach-of-contract and unjust-enrichment claims that were pleaded in the complaint. We will not infer consent to conforming the pleadings to the proof merely because evidence relevant to a properly pled issue incidentally tends to establish an unpled one. *Gregory*, *supra*. When Grayson moved to amend the pleadings to conform to the proof at trial, Couch objected and stated that he was not placed on notice to defend either of these new claims. In Couch's posttrial brief, Couch again argued that he was not on notice that he needed to prepare a defense of either count and that prejudice precluded the granting of the motion. Finally, Couch also argued in his posttrial brief that he did not consent to try these additional claims because the evidence relevant to these claims is also relevant to the other pleaded issues in the case. Couch's objections are well taken. Indeed, Grayson's own posttrial brief stated, "David Couch had ample opportunity to defend the claims of alter ego and breach of fiduciary duty because they were interwoven into the same facts and circumstances for Plaintiff's claims of breach of contract and unjust enrichment." Here, Grayson essentially admitted that the proof of the properly pleaded issues was relevant to the proof on the claims it sought to add, thus negating the need for Couch to object to the evidence. And although Couch did not move for a continuance, that is but one factor to consider in the analysis, and under these circumstances we do not believe a motion for continuance was required when this case had already been pending for thirteen years, and there was more than ample time for Grayson to have amended its pleadings before filing its motion on the day of trial.

Finally, under this point Grayson also argues that the trial court erred in "initially allowing the pleadings to conform to the proof" but then changed its mind without informing counsel before the final judgment, which would have allowed Grayson to either brief the issue or consider a voluntary nonsuit without prejudice. However, Grayson's representation that the trial court "initially allow[ed] the pleadings to conform to the proof" is misleading and is not accurate. At no time did the trial court rule that it was allowing the pleadings to conform to the proof. Grayson refers to a colloquy that occurred while Grayson's counsel was questioning Couch on direct examination during the plaintiff's case. Grayson's counsel accused Couch of committing fraud upon the courts, Couch's counsel objected, and the trial court sustained the objection because fraud had not been proved or pled. Grayson's counsel then advised that *at the end of the case* it would ask for the pleadings to conform to the proof, stating, "*We will* file that motion." (Emphasis added.) At that point, the trial court did make a general statement that pleadings can be amended to conform to the proof but stated that in *this instance*, there had been no evidence of fraud and, moreover, that fraud had not been pled. Neither at that time nor at any other time did the trial court make a ruling allowing the pleadings to conform to the proof. When Grayson eventually made its formal motion at the close of its case, Couch objected, and the trial court took the matter under advisement. At the close of the case, the trial court held its ruling in abeyance and ordered the parties to file posttrial briefs, and the parties briefed the issue as directed. Contrary to Grayson's argument, the trial court did not initially allow the pleadings to conform to the proof and then later change its mind, and also contrary to Grayson's argument, it was allowed to fully brief the issue.

15

For the reasons stated herein, we hold that the trial court did not abuse its discretion in denying Grayson's motion to amend the pleadings to conform to the proof. Therefore, we conclude that no error occurred under this point.

B. The Trial Court's Denial of Grayson's Unjust-Enrichment Claim

Grayson's remaining argument is that the trial court erred in denying, as a matter of law, its unjust-enrichment claim. With respect to Grayson's unjust-enrichment claim, the trial court found:

> Count II of the First Amended Complaint alleges unjust enrichment. The Grayson Firm alleges that Mr. Couch was unjustly enriched by breaching a contract. However, no contract existed to breach as explained above and certainly none with Mr. Couch individually. Therefore, no "operative act, intent, or situation that made the enrichment of [Mr. Couch] unjust and inequitable" exists . . . and the claim fails as a matter of law.

Grayson argues that the trial court erred when it ruled that it was not entitled to relief on its claim of unjust enrichment as a matter of law because it failed to prove the existence of a fee-splitting contract with Couch. Grayson asserts that the trial court apparently believed that without a finding of an enforceable contract, there can be no unjust enrichment. In so doing, the trial court apparently did not even consider the evidence but reasoned that because the contract claim failed there could be no equitable claim for unjust enrichment. Grayson states that whether there was an enforceable contract is a separate matter and states further that unjust enrichment is an equitable remedy that does not depend on the existence of an enforceable contract. We agree with Grayson's argument.

Our standard of review in an appeal from a bench trial is well settled. Following a bench trial, an appellate court asks whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence and reviews questions of law de novo.

16

*AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, 602 S.W.3d 726. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made. *Id.*

The issue of unjust enrichment is a question of fact, and for a court to find unjust enrichment, a party must have received something of value to which the party is not entitled and which the party must restore. *Trickett v. Spann*, 2020 Ark. App. 552, 613 S.W.3d 773. There also must be some operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* A trial court that finds unjust enrichment uses its equitable power to impose a quasi-contract, or contract implied in law, in order to do justice. *Id.* The underlying principle is that one person should not unjustly enrich himself or herself at the expense of another. *Id.* The basis for recovery under this theory is the benefit that the party has received, and it is restitutionary in nature. *Id.* Unjust enrichment is an equitable principle invoked to render a situation fair under the circumstances. *Id.*

With these principles in mind, the absence of an enforceable contract operates as a potential *trigger* to the application of unjust enrichment, and not a bar, as the trial court apparently ruled. Professor Howard Brill's treatise, *Arkansas Law of Damages*, explains this concept well:

> As a general rule, if the situation or relationship is covered by a valid, legal, and binding contract, an implied in law theory cannot be successfully asserted. An express contract cannot be circumvented by unjust enrichment. Courts should be hesitant to employ a quasi-contractual theory of recovery where an underlying express contract already exists and fairly distributes the risks among the parties involved. Although there are exceptions, the general rule is that the existence of a valid written contract ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter.

*However, when an express contract does not exist, is void, or unenforceable, or does not provide justice, these alternative theories may be asserted.*

. . . .

The rules of pleading permit both claims—express contract and contract implied in law—to be pursued in the alternative and, in appropriate circumstances, *unjust enrichment claims to be successfully asserted when the contract claim fails.* Relying on their equitable heritage, courts are free to create and impose remedies to further justice and grant relief against inequitable conduct.

1 Howard W. Brill & Christian H. Brill, *Arkansas Law of Damages* § 31:2 (6th ed. 2014) (emphasis added). In *Patton v. Brown-Moore Lumber Co.*, 173 Ark. 128, 292 S.W.383 (1927), the supreme court stated that an action for unjust enrichment is not dependent upon an express promise but it is maintainable in all cases where one person has received money or its equivalent under such circumstances that, in equity and good conscience, he ought not to retain it, and it belongs to another.

We hold that the trial court erred to the extent that it concluded, as a matter of law, that Grayson's failure to prove the existence of an enforceable contract barred it from recovery on its alternative claim for unjust enrichment. Contrary to the trial court's findings, unjust enrichment is a remedy that does not depend on the existence of an enforceable contract but, rather, may be asserted in the absence of an enforceable contract. As Grayson states in its brief, there was evidence that Grayson and Couch were jointly employed to represent the estates in several nursing-home cases and that Couch alone was paid the fee in those cases. Furthermore, it is undisputed that at all times relevant to this lawsuit, Couch was accommodated with an office at Grayson's law firm and was given access to its staff, equipment, and supplies. Instead of denying Grayson's unjust-enrichment claim as a matter of law because there was no enforceable contract between the parties, the trial court should

have considered the evidence and decided the issue on the basis of the proper standards for proving an unjust-enrichment claim. We, therefore, reverse the judgment and remand the case to the trial court for further consideration of Grayson's unjust-enrichment claim. By reversing and remanding the claim for unjust enrichment, we are not commenting on the merits of said claim.

### III. *Couch's Cross-Appeal*

For his cross-appeal, Couch argues that the trial court erred by denying his motion for attorney's fees because he was entitled to the fees as the prevailing party in a breach-of-contract action under Ark. Code Ann. § 16-22-308. Arkansas Code Annotated 16-22-308 (Repl. 1999) provides in pertinent part:

> In any civil action to recover on . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Harrill & Sutter, PLLC v. Kosin*, 2011 Ark. 51, 378 S.W.3d 135. In addition to failing to award attorney's fees, Couch argues that the trial court erred further in failing to provide an explanation for the denial of the fees.

In *Perry v. Baptist Health*, 368 Ark. 114, 243 S.W.3d 310 (2006), the supreme court stated that in deciding the issue of who is the prevailing party in litigation under Ark. Code Ann. § 16-22-308, the term "prevailing party" is analyzed in terms of cases and not in terms of discrete issues within cases. Prior to awarding attorney's fees, the trial court is required

to determine which party, if any, prevailed on the merits of the case as a whole, and need not make such a determination for particular issues within the case. *Id*.

Although Couch prevailed in defending Grayson's breach-of-contract claim, and Grayson does not challenge that ruling on appeal, in this appeal we are reversing and remanding for further consideration of Grayson's unjust-enrichment claim. Because we reverse and remand on the unjust-enrichment claim, the "prevailing party" in the case as a whole has yet to be determined. Therefore, we decline to address Couch's argument on cross-appeal concerning the trial court's denial of attorney's fees, and we dismiss the cross-appeal as moot.[5]

IV. *Conclusion*

In conclusion, in the direct appeal, we affirm the trial court's denial of Grayson's motion to amend the pleadings to conform to the proof. However, also in the direct appeal, we reverse the judgment and remand the case to the trial court for further consideration of Grayson's unjust-enrichment claim. We dismiss Couch's cross-appeal as moot.

Affirmed in part on direct appeal; reversed and remanded in part on direct appeal; cross-appeal dismissed.

HARRISON, C.J., and GRUBER, J., agree.

*Robert S. Tschiemer*, for appellant/cross-appellee.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee/cross-appellant.

---

[5]Should the attorney-fee issue arise on remand, we note that our supreme court has held that when attorney's fees are denied, the trial court must give an explanation for its decision in denying the fees. *See Harrill & Sutter, PLLC, supra*.