Cite as 2024 Ark. App. 291

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-27

| | |
|---|---|
| GARY W. HORTON | **Opinion Delivered** May 1, 2024 |
| APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03CV-21-263] |
| V. | |
| DEBORAH L. BOGGS | HONORABLE JOHNNIE A. COPELAND, JUDGE |
| APPELLEE | |
| | REVERSED AND REMANDED |

## STEPHANIE POTTER BARRETT, Judge

Gary Horton appeals an order from the Baxter County Circuit Court finding that he would be unjustly enriched if he was allowed to keep one-half of the net proceeds from the sale of a house in Cotter, Arkansas ("Cotter house"), that he owned with appellee Deborah Boggs as joint tenants with right of survivorship. He argues on appeal that there was no basis for the circuit court's application of unjust enrichment; that there was no conditional gift subject to a separate agreement between the parties; and that such a condition could not be asserted using "testamentary contingency" when there was no evidence presented at the hearing to support that finding. We agree that there was no conditional gift and, thus, no unjust enrichment, and we reverse and remand for entry of an order awarding Horton one-half of the proceeds from the sale of the house.

Horton and Boggs met in 2015 and began living together in a house Boggs owned in Leslie, Arkansas. In June 2018, after they separated, Boggs sold the Leslie house and moved to Monrovia, Indiana, where she purchased a house in her name only using the proceeds from the sale of the Leslie house. Horton followed Boggs to Indiana, where they reconciled; he eventually convinced Boggs to add his name to the deed to the Indiana property, which she did on April 2, 2019. Boggs testified that she placed Horton's name on the Indiana deed only because she believed they were going to get married, and Horton was concerned that if anything were to happen to her, he would not have a place to live. Horton testified that Boggs added his name to the Indiana deed because she did not want her daughter to inherit the property due to substance-abuse issues. On April 3, the day after Boggs had added Horton to the Indiana deed, Horton told Boggs that he had been having an affair; Horton left for approximately a week, but the parties again reconciled.

The parties decided to move back to Arkansas, selling the Indiana house in November 2019 for $180,000 and using a large portion of those proceeds to purchase the Cotter house; the remaining proceeds were spent on automobiles and other personal property not at issue in this appeal. The warranty deed, which listed the purchasers of the Cotter house as "Gary W. Horton and Deborah L. Boggs as joint tenants with full right of survivorship," was recorded on December 2, 2019.

The parties put the Cotter house on the market after finding another property in Clarkridge, Arkansas, and making an offer on that property. Boggs later discovered after a telephone call with her realtor that Horton had canceled the purchase of the Clarkridge

house without her knowledge. The parties eventually separated for good, and the Cotter house was sold in June 2020. The proceeds netted from the sale of the Cotter house equaled $160,293.30. However, Boggs disputed that Horton was entitled to any of the Cotter house proceeds, which led Horton to file this lawsuit. Horton claimed he was entitled to one-half of the net proceeds because the parties owned the property as joint tenants. Boggs filed a counterclaim for unjust enrichment, breach of contract, fraudulent inducement, and conversion; she asserted that the sole reason for adding Horton's name to the deeds was that it was a conditional gift under the contemplation and expectation of marriage and a promise of marriage from Horton. Boggs's assertion of conversion in her counterclaim involved a list of numerous firearms as well as other personal property including an air compressor, a power washer, collectable Norman Rockwell plates, trucks, a cedar chest, a bistro table and two chairs, and a grill and two propane tanks, all of which she claimed were owned by her but taken by Horton when he left.

In its order, the circuit court determined that there was no contract between the parties to breach, nor was there any fraudulent inducement since Boggs reconciled with Horton, cohabited with him, and allowed his name to be placed on the deed to the Cotter house after she had learned of his affair. The circuit court stated that Boggs did not add Horton to the deeds in contemplation of marriage, finding that if there had been any serious discussion of marriage, it was over with in 2018, prior to the move to Indiana. It determined that it was just as likely that Boggs used the deed in lieu of an estate-planning device, such as a will or trust, because it ensured that Horton would have a place to live if something were

3

to happen to Boggs, and it would prevent Boggs's daughter from inheriting her real property. The circuit court noted there was no testimony presented that the parties agreed that if they did not get married or if the relationship ended, Horton would execute a deed returning the Cotter house property to Boggs. However, the circuit court, stating that it had broad power to "do equity," found that Horton would be unjustly enriched if he were allowed to retain one-half of the Cotter house proceeds because he had provided no funds to purchase the property and provided little assistance in paying the bills or for its upkeep; it determined that, because of their romantic relationship, placing Horton's name on the deeds was done with the intent of providing for Horton in the event of Boggs's death, but since the relationship had ended, it was reasonable that Boggs would no longer want Horton to receive the property upon her death; and it awarded the sales proceeds solely to Boggs. The circuit court further found that the guns listed in Boggs's exhibit were purchased by her and belonged to her, although it was unclear which guns she contended Horton had in his possession, and it ordered Horton to produce any of the guns from the list that he had in his possession within fifteen days; there was no mention of the other personal property Boggs claimed Horton had converted.[1]

---

[1]Boggs moved to dismiss Horton's appeal with this court, asserting there was no final order because the circuit court did not determine which of Boggs's guns Horton had in his possession and must return, and the order failed to rule on Boggs's conversion claim as to the other items of personal property. This court unanimously denied Boggs's motion on September 27, 2023. In her brief, Boggs again asserts there is no final, appealable order. We again disagree.

The appellate courts review findings made at a bench trial to determine whether they are clearly erroneous or clearly against the preponderance of the evidence. *Pruitt v. Barclay*, 2023 Ark. App. 198, 663 S.W.3d 799. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, after a review of the evidence, is left with a definite and firm conviction that a mistake was made. *Id.*

Whether unjust enrichment has occurred is a question of fact; for a court to find unjust enrichment, a party must have received something of value to which he or she is not entitled and that he or she must restore. *Grayson & Grayson, P.A. v. Couch*, 2023 Ark. App. 479, 678 S.W.3d 789. There must be an operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* A circuit court that finds unjust enrichment uses its equitable power to impose a quasi-contract, or contract implied in law, in order to do justice; the underlying principle is that one person should not unjustly enrich himself or herself at the expense of another. *Id.* Unjust enrichment is restitutionary in nature; it is an equitable principle invoked to render a situation fair under the circumstances. *Id.* One who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen

---

An order is final and appealable if it dismisses the parties from the court, discharges them from the action, or concludes their rights to the subject matter in controversy; but an order that contemplates further action by a party or the court is not a final, appealable order. *Yafai Inv., Inc. v. Naser*, 2022 Ark. App. 346, 652 S.W.3d 617. The order directed Horton to return any guns in his possession to Boggs within fifteen days but contemplated no further action. Boggs presented no evidence regarding any of the other personal property, and Horton denied having any of the other personal property Boggs listed in her claim for conversion. The circuit court addressed Boggs's counterclaim, and from a practical standpoint, there is no further action to be taken.

5

to exercise a legal or contractual right. *Trickett v. Spann*, 2020 Ark. App. 552, 613 S.W.3d 773.

The circuit court expressly rejected Boggs's claim that placing Horton's name on the Indiana and Arkansas deeds was a conditional gift in contemplation of marriage; it also specifically found that no testimony was provided that Horton would execute a deed returning the property to Boggs if the parties did not marry or if the relationship ended. Instead, the circuit court found it was "just as likely" Boggs wanted to use the deed "in lieu of an estate planning device such as a will or a trust," and because the romantic relationship had ended, it was reasonable that Boggs would no longer want Horton to receive the property upon her death. This was not a theory advanced by Boggs.

Was the transfer of property a gift to Horton from Boggs? Boggs received no consideration from Horton for placing his name on either of the deeds. The circuit court rejected Boggs's claim that the transfer of property was conditioned on marriage but instead found Boggs had placed Horton's name on the deeds to provide for Horton in the event of Boggs's death and that because the relationship had now ended, it was reasonable for Boggs to no longer want Horton to receive the property in the event of her death. However, the circuit court also found there was no testimony presented that Horton would execute a deed returning the property to Boggs if the relationship ended; there were no conditions on the transfer of interest in the properties from Boggs to Horton.

For an inter vivos gift to occur, it must be proved by clear and convincing evidence that (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3)

6

the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *Trickett*, *supra*.

No argument was made that Boggs was not of sound mind. Boggs added Horton's name to the Indiana property deed; when the Indiana property was sold, a majority of those proceeds were used to purchase the Cotter house, which was also titled in Boggs's and Horton's names as "joint tenants with the full right of survivorship." Did Boggs clearly intend to make an immediate, present, and final gift to Horton? A deed is inoperative unless there is a valid delivery; a presumption of a valid delivery attaches when a deed is recorded. *Baldridge v. Baldridge*, 100 Ark. App. 148, 265 S.W.3d 146 (2007). Both the Indiana deed and the Cotter house deed were recorded. Did Boggs unconditionally release all future dominion and control over the one-half interest in the properties she deeded to Horton? The circuit court found there was no testimony presented that the parties agreed that Horton would execute a deed returning the property to Boggs if the relationship ended. And Horton clearly accepted the gift of one-half interest in the properties, as evidenced by the filing of this lawsuit asserting his entitlement as a joint tenant to one-half of the net proceeds from the sale of the Cotter house. Boggs made an unconditional inter vivos gift to Horton when she placed his name on the deeds as a joint tenant and had the deeds recorded with no conditions; while it was an unwise decision that Boggs apparently regrets, that is not a valid basis for setting aside a deed. The circuit court's decision that Horton would be unjustly enriched if he received one-half of the net proceeds from the sale of the Cotter house was

7

clearly erroneous, and that decision is reversed and remanded for entry of an order awarding

Horton one-half of the Cotter house proceeds.

Reversed and remanded.

HARRISON, C.J., and VIRDEN, J., agree.

*Jeremy B. Lowrey*, for appellant.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.