Cite as 2024 Ark. App. 417

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-87

| | |
|---|---|
| E.J. SWAFFAR | Opinion Delivered September 11, 2024 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT |
| V. | [NO. 23CV-20-1352] |
| BRUCE WHITE | HONORABLE CHARLES E. CLAWSON |
| APPELLEE | III, JUDGE |
| | REVERSED AND REMANDED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant E.J. Swaffar appeals the Faulkner County Circuit Court's grant of summary judgment to appellee Bruce White. He makes five arguments on appeal: (1) the circuit court's grant of summary judgment "by default" was clearly erroneous; (2) the summary-judgment order is void because the motion was not properly served; (3) the summary-judgment order is void because it was conditional; (4) the award of attorney's fees was erroneous; and (5) the interest award was erroneous. We agree that the motion for summary judgment was not properly served on Swaffar, that the circuit court improperly granted summary judgment, and that the award of attorney's fees was erroneous. Therefore, we reverse and remand this case to the circuit court for further proceedings.

I. *Facts*

White filed a complaint in the Faulkner County Circuit Court against Swaffar for specific performance on December 10, 2020, asserting that on August 13, 2008, he had entered into a contract to purchase from Swaffar real property located in Faulkner County for $41,680. White alleged that he had paid over $41,000 as well as all interest due, but when he asked Swaffar to prepare an unsigned deed for review before he paid off the contract, Swaffar claimed White had not paid the interest on the deferred purchase price, a claim White disputed. White alleged that, despite his compliance with the contract, Swaffar had failed and refused to comply with the contract, even though White stood ready and able to pay the balance of the purchase price. He prayed that Swaffar be enjoined from disposing of the property, be required to accept the balance of the purchase price, and be required to transfer the real property to White in accordance with the purchase agreement, and he asked for his costs, attorney's fees, and all other relief to which he was entitled.

Attached to the complaint were the purchase agreement, the installment note, and a statement signed by White. The purchase agreement provided, in pertinent part, (1) that White agreed to pay Swaffar the sum of $41,680 for the real property, $500 of which he had already paid; (2) that it was not a sale but a contract to purchase, and if and when the conditions of the contract were met in full and all monies paid, a deed would been given; (3) White agreed to pay all taxes on the real property as well as maintain a policy of fire and extended-coverage insurance in the amount of $40,000 from a company acceptable to Swaffar with Swaffar named as the loss payee; (4) that time was of the essence, and if White defaulted on any payment for a period of three days or failed to pay taxes, assessments, or

2

insurance, Swaffar had the right to either declare the entire debt and interest due and payable or rescind the agreement and retain all monies previously paid as rent and either continue a landlord and tenant relationship at a rate of $500 a month or demand immediate possession of the property; and (5) that any payment received more than three days after the due date would be subject to a $5 per day late charge on each payment until fully paid.

The installment note, signed by White, provided in pertinent part,

> FOR VALUE RECEIVED, I and or We Promise to pay to the order of E.J. Swaffar Forty-one thousand one hundred eighty dollars ($41,180.00) from date until due at the rate of 10% per annum and thereafter until paid at the rate of 10% per annum. Payable Five Hundred Dollars ($500.00) on principal with interest to the date of such payment on the entire unpaid principal balance each month beginning the second Wednesday of each and every month beginning the month of August 2008.
>
> . . . .
>
> Should default be made in the payment of any installment of principal or interest, the entire debt, with interest at the rate of 10% per annum until paid, shall become due and payable at the option of the holder hereof. The maker(s) and endorser(s) waive notice, demand and presentment and consent that time for payment may be extended without notice. No delay in the exercise of the option of acceleration shall be construed as waiver of such right, but it may be exercised at any subsequent time during default.

White's statement acknowledged that he understood that as long as he made timely payments in the manner set forth in the purchase agreement, he would have free use of the real property, but if he missed a payment and Swaffar exercised his option, White would no longer own or claim any interest, right, or title to the real property.

Swaffar filed a pro se answer and counterclaim on January 7, 2021, stating that he believed the purchase price to be "approximately correct," but he averred that White had

3

paid only the monthly principal amount of $500, he had never paid any interest, and he had failed to secure insurance in the amount required by the purchase agreement. Swaffar asserted that his and White's relationship had been converted into that of landlord and tenant due to White's failure to comply with the terms of the purchase agreement, with any money paid considered to be rent. In his counterclaim, Swaffar asserted that he had purchased the real property in question from White before the parties entered into the purchase agreement; at the time of that purchase, White had represented that there were no outstanding liens or taxes on the property, which was false; White had never secured $40,000 of insurance for the property; and White owed between $3,000 and $5,000 in penalties for late-payment charges, thus forfeiting entitlement to a deed to the real property.

White amended his complaint on April 19, adding a count for conversion and asserting that he had overpaid Swaffar by $18,264.73. Specifically, he alleged:

> The language of the note could have been construed to require [White] to pay $500.00 each month on the principal as well as the interest on the principal balance as of that date of payment. The parties, however, never followed that protocol. [Swaffar] never once contacted [White] about payments of interest not made. It was [White's] understanding that after the principal was repaid at $500.00 per month in approximately 82.36 such monthly payments, the payments should continue at $500.00 per month and be applied to the interest that had accumulated from the date of the note figured on the principal balance that was, of course, decreasing at the rate of $500.00 per month. That is exactly what he did.

White asserted that Swaffar never contacted him to apprise him of the overpayments, nor did he return or offer to return the overpaid amount. White sought judgment for $18,264.73; prejudgment interest of 6 percent per annum until judgment and then 10

4

percent per annum until paid in full; and punitive damages in an amount equal to the sum of the overpayments and interest.

White filed a second amended complaint on February 11, 2022, to add a claim of usury, alleging that he had borrowed only $28,146.18 from Swaffar but had paid $41,180.00 in principal and interest, which amounted to a usurious interest rate in Arkansas. He asserted that he had overpaid Swaffar in the amount of $18,264.73 "due to confusion generated by [Swaffar's] failure to treat the note payments as a combination of amortized principal along with interest to the date of each payment."

White filed a motion for summary judgment on August 2, 2022, alleging that there was no genuine issue of material fact that Swaffar was "in default" on the purchase agreement; that the last payment to Swaffar should have been payment 83, but because Swaffar had not kept a record of White's payments, White had made 149 payments; that the interest rate on the note was usurious and therefore void as to both principal and interest, which required Swaffar to pay White $74,500, with 6 percent prejudgment interest and 10 percent interest after the debt was reduced to judgment; that Swaffar's actions "in dictating this usurious arrangement and then accepting and refusing to return overpayments made by [White] once he was informed of the improper overpayments constitute . . . premeditated, intentional and conscious conversion" and thus made the grant of punitive or exemplary damages both lawful and appropriate; and that because the action was based principally on a promissory note and breach of the purchase contract, White requested that the circuit court award him attorney's fees as the prevailing party. White further asked the circuit court

5

to order that, if Swaffar had encumbered the property in any way, Swaffar be required to pay the amounts necessary to have the real property returned to White free and clear of any encumbrances.

Attached to the summary-judgment motion was a list of White's purported $500 monthly principal-only payments to Swaffar from August 13, 2008, to June 10, 2015. The list reflects that payments from June 10, 2015, to December 15, 2020, consisted of $500 monthly principal payments as well as interest in the total amount of $4,280.28.

White also attached his affidavit to his summary-judgment motion, explaining that he wanted to purchase mobile-home moving equipment but did not have the $13,000, and when a bank would not loan him the money, he turned to Swaffar for an $18,000 loan. White stated that in order to receive the loan, Swaffar required White to deed the real property at issue in this case, valued at $175,000, to Swaffar for the life of the loan as security for a $20,000 loan; Swaffar agreed to deed the real property back to White when White paid off the loan. Swaffar required White to pay $8,146.18 to clear the title to the real property before White deeded the property to Swaffar as security for the $20,000 loan. White claimed Swaffar actually withdrew $25,000 on May 7, 2008, and charged that amount to White, but Swaffar kept $5,000 of the money, stating that he needed to replenish his cash in his home safe. White stated that he signed the promissory note and purchase agreement on August 13, 2008, stating the amount of the note was $41,180; when he asked why the amount of the note was so much higher than the $25,000 he had borrowed, Swaffar told him that to get to a 20 percent rate of interest, the extra return had to be built into the amount White

was borrowing, hence the difference between what White had borrowed and what he was required to pay.

White also provided an affidavit from CPA Zachary Wojtek, who stated that he had reviewed the promissory note as well as a list compiled by White of the payments made to Swaffar, with the amount and date of each payment made. Wojtek stated he was informed that loans yielding an interest rate in excess of 17 percent per annum were void as to both principal and interest, and after constructing a history of payments based on this information, Wojtek determined that Swaffar had included an "interest premium" of $13,032.82 by increasing the original contract price and amount financed in order for Swaffar to realize a higher amount of interest income without increasing the stated interest rate. Wojtek concluded White had made 149 payments of $500 each, resulting in an effective annual interest rate of 21.16 percent and an annual interest rate of 19.352 percent, which was an interest rate that "would appear" to violate the Arkansas Constitution.

Jon Sanford, White's attorney, also filed an affidavit regarding attorney's fees based on three separate fee and engagement letters—one for specific performance of the contract, one for conversion, and one for the usurious loan. While noting that the engagement letter for the conversion claim was for a contingency fee, and there was no independent statutory authority authorizing a grant of that fee, Sanford claimed that because White was the prevailing party on the breach-of-contract claim and on the claim that the promissory note contained a usurious rate of interest, he was entitled to an award of attorney's fees under Arkansas Code Annotated section 16-22-308 (Repl. 1999).

On September 6, 2022, White filed in the circuit court a document titled proof of notice of service on defendant (Swaffar) of motion for summary judgment filed August 2, 2022, stating that a copy of the motion for summary judgment along with supporting documents had been mailed by certified mail to Swaffar at the address Swaffar supplied to White, and the address had been used successfully by White several times prior to August 2. However, as evidenced by the copy of the front of the certified-mail envelope, which White included in his document for proof of service, a notation was made that Swaffar was notified of the certified mail on August 5, but the certified mail was returned to White's counsel by the United States Post Office (USPS) on August 27 marked "Return to Sender—Unclaimed—Unable to Forward." White claimed that Swaffar's response time ran on August 26, 2022, and Swaffar had not filed an answer or any other responsive pleading as of September 6.

Swaffar filed a motion on September 29, asserting that he had never been served with the motion for summary judgment, and the first time he was made aware of the motion was on September 19 when he received a copy of an email with attachments that he received via regular USPS delivery, after which he obtained a copy of the motion through the Faulkner County Circuit Clerk's office. He asked that the motion for summary judgment be struck or denied.

In response, White asserted that the motion for summary judgment was filed on August 2 and served on Swaffar by regular USPS mail as it had been done historically in the case; that Swaffar failed to accept the mail containing the motion for summary judgment and "went into default" on August 26; and when the circuit court was advised of this, it had

8

directed Sanford to prepare a precedent for a final order consistent with the motion for summary judgment.

On October 17, the circuit court entered an order granting White's motion for summary judgment, noting that it had been apprised on September 6 that Swaffar had failed to respond to a USPS notice to pick up a package containing White's motion for summary judgment, and it had directed Sanford to prepare a precedent granting White's motion for summary judgment. The order found that Swaffar was in default on the purchase agreement for failing to reconvey the real property White had conveyed to Swaffar as security for the loan and ordered Swaffar to prepare a deed conveying the real property to White; the order further provided that if any enforceable claims filed after May 7, 2008, existed on the real property, Swaffar was required to pay them as well as any costs of getting such claims released, or White could move the court for an order compelling Swaffar to clear the title at his own expense. The circuit court determined that Swaffar had converted White's funds, stating,

> Due to the fact that [Swaffar] was not keeping a record of payments, [Swaffar] had no way of knowing when the number of payments required by the parties had been made. Since [White] was expecting [Swaffar] to do so, [White] assumed he would hear from [Swaffar] when the last payment was made. As Exhibit MSJ-1 shows, the last payment required by [White] was payment No. 83, but [White] continued to make 66 payments after the debt was paid for a total of 149 payments.

The circuit court further found that the usurious interest rate and the acceptance of and refusal to return the improper overpayments constituted premediated, intentional, and conscious conversion by Swaffar of more than 66 of White's $500 monthly payments, and it awarded punitive damages to White in the amount of the total overpayments and interest

on the overpayments at the rate of 6 percent per annum prejudgment interest, with the interest rate increasing to 10 percent per annum once the debt was reduced to judgment; these punitive damages were in addition to the relief granting repayment of the overpayments with interest. The circuit court found that the interest rate for the loan was usurious because it was in excess of 17 percent, thereby making the loan void as to both principal and interest, and that Swaffar must pay White $74,500, which would draw interest at 6 percent per annum from the date of each payment until paid in full, with the interest rate increasing to 10 percent per annum once the debt was reduced to judgment. The circuit court awarded Sanford a fee of $7,910.23 due to the fact that White was the prevailing party in a promissory-note/breach-of-purchaser-agreement action; it further awarded Sanford attorney's fees in the sum of 50 percent of any of the amounts Sanford could recover of the overpayments and punitive damages and any amount collected that was attributable to Swaffar's charging a usurious rate of interest, namely $74,500 with 6 percent interest.

II. *Service of Motion for Summary Judgment on Swaffar*

Although his second argument on appeal, we first address Swaffar's argument that the order granting summary judgment is void because White failed to properly serve the motion on Swaffar. We hold that White failed to properly serve Swaffar with the motion for summary judgment.

Swaffar represented himself in the proceedings below. Section 1(b)(1) of Arkansas Supreme Court Administrative Order No. 21 provides that persons proceeding pro se shall be entitled to submit conventional paper filings. Rule 5(a) of the Arkansas Rules of Civil

Procedure provides that every pleading filed subsequent to the complaint, except ones that may be heard ex parte, shall be served on each party. Subsection (b)(2) provides that one method by which service can be had on a party is by sending it regular mail to his last known address; service by mail is presumptively complete upon mailing.

Here, Sanford sent Swaffar the motion for summary judgment by certified mail, not regular mail. Swaffar did not pick up the certified mail, and it was returned to Sanford as unclaimed; a copy of the front of the envelope showing it was unclaimed and returned to Sanford was attached to White's proof of notice of service of the summary-judgment motion on Swaffar and filed with the court on September 6, 2022. This information actually rebuts the presumption that service was complete upon mailing—it proved that Swaffar did not receive the motion for summary judgment because it was returned to Sanford. Swaffar raised this issue of lack of service to the circuit court in his motion for the circuit court's consideration of pending issues filed on September 28, but the circuit court granted White's motion for summary judgment on October 17 on the basis of the fact that Swaffar had failed to pick up the certified mail. We hold that Swaffar was never properly served with the motion for summary judgment.

### III. *"Default" Summary Judgment*

As discussed above, Swaffar was never properly served with White's motion for summary judgment, and the circuit court erred in concluding that Swaffar's failure to pick up certified mail constituted presumptive service on him, which was the basis for granting White's summary-judgment motion. Swaffar argues that the circuit court's order granting

11

summary judgment "by default" was clearly erroneous. We agree that summary judgment was improperly granted in this case, and we reverse and remand this case for further proceedings.

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated. *Summerfield v. Se. Freight Lines, Inc.*, 2024 Ark. App. 326, 690 S.W.3d 150. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party, but once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate be deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* The evidence is viewed in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party, with appellate review focusing not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.*

Summary judgment may not be warranted even when a party fails to respond to a motion for summary judgment or fails to present proof showing a genuine issue of material fact—if the proof supporting a motion for summary judgment is insufficient, there is no duty on the part of the opposing party to meet proof with proof. *Washington Cnty., Ark. v. Presley*, 2019 Ark. App. 150, 573 S.W.3d 563 (citing *Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000)). Furthermore, summary judgment should not be granted if it is necessary to

12

weigh the credibility of statements to resolve an issue. *Joy Corp v. Roberts*, 2024 Ark. App. 328.

We hold that summary judgment was improper in this case because White's own proof was insufficient and left genuine issues of material fact to be determined. In his complaint, White asserted that the purchase price for the real property was $41,680, he made a $500 down payment, and he executed an installment note reflecting the balance of $41,180 with interest calculated at 10 percent per annum. The purchase agreement provided that if White failed to make any installment payment or failed to pay taxes, assessments, or purchase insurance as provided for in the agreement, Swaffar could declare the entire debt and interest due and payable; he could rescind the agreement and convert the relationship to that of landlord and tenant and retain all monies paid as rent; or he could, after notice, demand possession of the property. In his answer, Swaffar denied that White had paid any interest, and he asserted that White had failed to obtain insurance on the property as required by the agreement, and as a result, the relationship had changed to that of landlord and tenant. White never addressed Swaffar's allegation that White failed to obtain insurance on the property, which, by the terms of the agreement, would also allow the relationship to be recharacterized as that of landlord and tenant.

In his amended complaint, White asserted that while the "language of the note could have been construed" to require him to pay $500 each month on the principal as well as the interest on the principal balance as of that date of payment, the parties never followed that protocol; instead, White asserted that it was his understanding that after the principal was

13

repaid at $500 a month, the payments would continue at $500 a month and be applied to the interest that had accrued from the date of the note calculated on the principal balance that was decreasing at the rate of $500 a month. White asserted that he had overpaid in the amount of $18,264.73; Swaffar denied White's claims, stating that White had failed to perform his duties under the terms of the agreement, that he was under no obligation to advise or interpret White's duties under the agreement, and that White had remained in "wrongful possession" of his land rent-free.

In White's second amended complaint, he agreed that while the installment note was for $41,180, he claimed that all he realized from the loan was $28,146.18 ($20,000 plus $8,146.18 for title closing charges). He claimed that the difference between what he received and what he was required to pay was so that Swaffar could realize a 20 percent rate of return. He further asserted that he had paid the $41,180 note in full on December 13, 2017, but that due to Swaffar's "failure to treat the note payments as a combination of amortized principal along with interest to the date of each payment, [White] overpaid the actual principal and accrued interest" by $18,264.73, and the interest rate of the loan was usurious.

In his affidavit attached to the motion for summary judgment, White, for the first time, asserted that he had received $20,000 from Swaffar as the loan amount, but Swaffar had actually withdrawn $25,000 from Swaffar's personal account and "charged that amount to my loan amount and kept $5,000 of it."

White's own assertions in his pleadings leave issues of material fact as to how much money he borrowed from Swaffar—the installment note said $41,180, and White asserted

three different borrowed amounts in his affidavit for summary judgment—$20,000, $28,146.18, and $25,000. Additionally, Swaffar asserted that he had not breached the terms of the agreement because White had not paid any interest and had failed to obtain insurance on the property as required by the purchase agreement, and therefore, he was within his rights to convert the agreement to one as between landlord and tenant—White never refuted the assertion that he failed to secure a policy of insurance on the property. This also creates an issue of material fact because the purchase agreement provided that Swaffar could convert the agreement to one as between a landlord and tenant if White failed to obtain insurance on the property. We hold that summary judgment was improperly granted since genuine issues of material fact remain to be litigated.

IV. *Award of Attorney's Fees*

Swaffar also argues that the award of attorney's fees is erroneous. The summary-judgment order awarded White, as the prevailing party, $7,910.23 in attorney's fees pursuant to Arkansas Code Annotated section 16-22-308 on the basis of his recovery for breach of contract and recovery on a usurious promissory note. In a separate paragraph, the order also referenced the three engagement letters White entered into with Sanford and found that attorney's fees were granted "as prayed for in attorney Sanford's contracts of employment . . . and shall consist of all sums paid, or due to be paid, by [White] to Jon R. Sanford as attorney's fees" as well as 50 percent of any amount recovered of the $18,000 overpayment, 50 percent of any punitive damages collected, and 50 percent of any amount collected that was attributable to the $74,500 plus interest Swaffar was required to repay due to the

15

usurious installment note. However, in his brief on appeal, White concedes that the only attorney's-fee award in the summary-judgment order was for $7,910.23 in light of the information set forth in Sanford's affidavit; therefore, given that concession, that is the only attorney's fee that will be addressed.

The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the circuit court abused its discretion. *Grayson & Grayson, P.A. v. Couch*, 2023 Ark. App. 479, 678 S.W.3d 789. In determining who the prevailing party is in litigation under Arkansas Code Annotated section 16-22-308, the analysis is in terms of cases, not in terms of discrete issues within cases; prior to awarding attorney's fees, the circuit court must determine which party, if any, prevailed on the merits of the case as a whole. *Id.* (citing *Perry v. Baptist Health*, 368 Ark. 114, 243 S.W.3d 310 (2006)). Because we reverse the grant of summary judgment and remand this case for trial, the prevailing party, if there is one, has yet to be determined; therefore, the attorney's-fee award is reversed.

Swaffar also argues, citing *McCabe v. Wal-Mart Associates, Inc.*, 2019 Ark. App. 566, 591 S.W.3d 335, that the attorney's-fee award must be reversed because White presented no evidence to substantiate the amount of attorney's fees claimed. Given the reversal of the attorney's-fee award due to the lack of a prevailing party, it is unnecessary to address this argument

V. *Conditional Judgment and Interest Award*

16

Swaffar makes two final arguments—that the summary-judgment order is void because it granted conditional relief and that the circuit court erred in awarding 10 percent interest on the judgment. Because the grant of summary judgment is reversed for the reasons discussed above, it is not necessary to address these issues.

Reversed and remanded.

HARRISON, C.J., and ABRAMSON, J., agree.

*Tim Cullen*, for appellant.

*Jon R. Sanford, P.A.*, by: *Jon R. Sanford*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.